## Louis Snyders' Sons Co. *v.* Armstrong.

(*Circuit Court, S. D. Ohio.* October 19, 1888.)

BANKS AND BANKING—NATIONAL BANKS—INSOLVENCY—ACTIONS—SET-OFF.

> On the failure of a national bank a depositor was indebted to it on 11 notes to the amount of $5,000, and had on deposit some $2,900. The receiver of the bank agreed that this sum should go as a set-off on the indebtedness, the depositor to pay the notes first coming due, and the deposit to be applied on the last-maturing notes. After paying the first two notes it was found that the others were in the hands of third parties, and the depositor was compelled to pay them, and filed a bill to authorize the receiver to refund the money paid under a mutual mistake. This bill was heard by the district judge of the Western district of Tennessee sitting in the circuit court of the Southern district of Ohio. *Held*, that the deposit should properly be set-off against the claim of the bank, and the depositor should recover the sum paid by him; but as the district judge of the Southern district of Ohio had held in an action between the same bank and a creditor, the circuit judge concurring therein, that the plea of set-off was not available, in order that there might not be different rules of set-off in the same court, in the case of the same insolvent, and as the case cannot be appealed, it will be remanded for reargument before the regular judges, who may in their discretion provide for a dissent of record, or do what may to them seem right in the premises.

In Equity.

*Jordan & Jordan*, for plaintiff.

*W. B. Burnet* and *J. E. Bruce*, for defendant.

HAMMOND, J. When the Fidelity National Bank became insolvent, on the 21st day of June, 1887, the defendant here, David Armstrong, was appointed its receiver, on the 27th day of June, 1887, and took possession of its assets, as required by law, under the direction of the comptroller of the currency. Rev. St. U. S. § 5234; Act 1876, c. 156; 1 Supp. Rev. St. 216; 19 St. 63. At that time the petitioner had to its credit as a depositor the sum of $2,828.29, taking no notice of disputed items arising out of protested drafts paid by the company, which were eliminated from this controversy by rulings made at the hearing. This balance on deposit arose out of its daily dealings with the bank, at which it kept an account, depositing from time to time both money and securities for collection on its account with the bank. It also at that date had procured discounts from the bank on 11 promissory notes for $5,000 each, maturing at short dates from July to October next ensuing. The petitioner and the receiver both believed that all these notes were then held by the bank, but in fact all but the two earliest, maturing July 23d and July 29th, respectively, had been sent away, and used in the operations of the bank officials immediately preceding the failure, for which some of them are now enduring imprisonment under criminal convictions had in this court. The petitioner and the receiver agreed that the deposit should go as a set-off on this indebtedness, but at his request the petitioner agreed to take the credit on the last of the notes, to fall due in October, instead of the first, maturing July 23d, as aforesaid. Hence the company paid to the receiver that note and the next, maturing July

29th; and to its surprise, and that of the receiver, the subsequently maturing notes, nine in number, were found afterwards to be in the hands of outside holders, and the petitioner was compelled to pay them accordingly. The agreement as to the set-off could not therefore be perfected according to the intention of the parties, and this petition was filed to compel, or rather to authorize, the receiver to reinstate the petitioner by refunding to it the money paid under this mutual mistake of fact.

That the petitioner is entitled to this relief, if it be entitled to a set-off at all, there can be no kind of doubt. It is obvious, however, that the receiver, being a fiduciary agent, and a mere instrumentality for the administration of the assets, under the provisions of the law in that behalf cannot by his agreement add anything to the rights of petitioner in the matter of the set-off, which must be determined solely upon the legal right of the parties in the premises, and as if the receiver were suing at law upon the first of the notes, and the petitioner had pleaded the balance due it by way of set-off. If that plea would have availed, then well may the company claim here that the receiver shall be directed to refund to it the money and interest by a judgment to that effect, thereby correcting the mutual mistake of fact; or, if it has any standing in a court of equity, then according to the principles governing that court.

At the argument I had a very decided conviction that the claim of set-off should prevail, but being informed that another case involving the assets of this same insolvent bank was pending before the regular district judge, and wishing to be further advised. I have held this case, until now there has been filed the opinion of that learned judge, concurred in by the circuit judge, that the plea of set-off was not available, under the circumstances of that case. *Armstrong* v. *Scott,* 36 Fed. Rep. 63. The opinion cites also the earlier decision of the learned circuit judge in the case of *Bung Co.* v. *Armstrong,* 34 Fed. Rep. 94. The latter case, as reported, does not disclose the nature of the cross-demands which were asked to be set off in that case, and they were presumably not deposits, since as it seems to me that that class of debts due from the bank would not be of the character described in the opinion as wanting in that quality of mutuality which promotes the operation of the equitable doctrine of set-off, as contradistinguished from the right of set-off as at law, under the force of the statutes made in that behalf; for I can imagine no class of counter-claims where, to use the language of the learned circuit judge, "there has been mutual trust or understanding that an existing debt should be discharged by a credit given upon the ground of such debt," or "a knowledge on both sides of an existing debt due to one party, and a credit by the other party founded on and trusting to such debt as a means of discharging it," more clearly exhibited than in that class arising out of the dealings between a banker and his depositor. The petitioner here, who deposited the notes, bills, and other securities for collection on its account in this bank, surely expected to discharge whatever discounts it received by drawing upon that account; and all that mutual knowledge, trust, or understanding described by the circuit judge certainly exists in such a case, if it ever exists at all. The creditors in that

case were not entitled to their set-off as at law, because they had waived it by voluntary payment, which is not the case here, the payment having been made under a mutual mistake of fact, as before stated. Hence, standing alone, I should regard that case in favor of the equitable right of set-off in this case, which this court might allow by reason of its jurisdiction to correct the mistake of fact upon which the parties proceeded, and which of itself would be a sufficient foundation for the jurisdiction of a court of equity in granting any relief, either statutory or equitable, to which the petitioner would be entitled. But in his letter concurring in the opinion of Mr. District Judge SAGE, and in that opinion itself announcing such concurrence, there seems to be some reliance on a similarity between the two cases those learned judges have decided respectively.

The district judge in *Armstrong* v. *Scott, supra,* concedes, as I understand it, that the insolvency of a debtor, under the general doctrine of equitable set-off, admits to the privilege of set-off debts that were not matured at the date of insolvency, and such is unquestionably the law, as shown by the citations in the opinion, and numerous other authorities cited in the briefs of counsel now before me. Ordinarily, of course, a debt not due cannot be set off against one already due and immediately payable, for the obvious reason that this would be to change the contract, and advance the day of payment. Thus, if the petitioner here had demanded payment by the bank of its deposit, payable on call, the bank could not have said, "We have your notes which will mature in the near future, and we will apply this deposit to their payment;" but if the petitioner became insolvent the bank could clearly claim that privilege as against other creditors, in any court of equity, unless I greatly misunderstand the authorities; and most certainly when the conditions mentioned by Mr. Circuit Judge JACKSON, in *Bung Co.* v. *Armstrong, supra,* would exist. Wat. Set-Off, p. 149, § 128, and numerous cases cited in the briefs here, and in the *Scott Case.* On the other hand, also, if one has a demand against another presently payable, and that other has debts against him not yet due, and becomes insolvent, the party presently indebted may equitably claim the set-off upon the paper not yet due in the hands of his insolvent creditor, or his assignee in insolvency. Id. p. 151, § 131, and cases cited in the briefs. This principle arises out of the fact of insolvency, *ipso facto,* and finds the highest development in all of our insolvency and bankruptcy statutes, particularly the late bankruptcy act of the United States, where the very best judicial and legislative thought upon this subject finds expression in its provisions and the decisions concerning the subject of set-off, express provision being made for a just abatement of the amount in cases of debts not due. And it should be noted here that no legislation anywhere upon the subject of insolvency has so scrupulously preserved and insisted upon the most exact and perfect equality among creditors. Nor was it thought that the fact that by that act the United States, and the States, respectively, and certain other preferred creditors, had given to them the privileges of preference for their debts against the insolvent, in any

way militated against the equitable doctrine of set-off, there recognized and established. It was only out of the assets remaining after these just and equitable set-offs were allowed that the preferred and other creditors were to be paid. There the bankrupt was discharged, but here, in these bank insolvent systems, provision is made for a remedy against shareholders to make good any deficiency of assets, whether to pay preferred creditors or other claimants. To deny this right of set-off in cases like this is to exonerate the shareholders, or at least to force the depositor to a bill under section 2 of the act of June 30, 1876, (1 Supp. Rev. St. U. S. 217; 19 St. 63,) instead of leaving the receiver to proceed against them under section 1 of that act, or section 5234 of the Revised Statutes. This is adding to the injustice of the denial the expense and delay of litigation, which it is one of the objects of the statutes and law of set-off to reasonably avoid.

As stated in *Aldrich* v. *Campbell*, 4 Gray, 284, 285, cases like this are "not to be determined upon technical rules of set-off, but upon principles regulating the settlement of insolvent estates, whether of persons living or deceased." And, as said by the chancellor, in *Lindsay* v. *Jackson*, 2 Paige 581, 585: "Although equality among creditors is equity, here is a prior and a paramount equity which must be provided for; an equity which is distinctly recognized by the insolvent acts of this state, which have also declared the other principle, and enforced it to a certain extent." The case of *Bank* v. *Taylor*, 56 Pa. St. 14, or others like it, cited in *Armstrong* v. *Scott, supra*, does not affect this equity, because in that case the debt proposed to be set off was assigned to the debtor of the bank after the act of insolvency, which makes all the difference imaginable, for it is well settled that the rights of the parties become fixed at the moment and by the act of insolvency, and any subsequent change of the then situation, by assignment or other transfer, cuts off this equity of "insolvency set-off," if I may call it so. It is against this kind of transfer or assignment, and in declaration of this principle, that section 5242 of the United States Revised Statutes, prohibiting such transfers, is aimed. And it seems to me plain that that section is no more in the way of allowing a set-off where the note passed into the hands of the receiver before maturity, than where it passed to him after it became due. If it excludes one it should exclude both, for either would as much as the other disturb that equality of distribution among creditors, or that preference of certain claims, upon which the opinion insists. I take it, therefore, to be plainly manifest that the opinion in *Armstrong* v. *Scott, supra*, must be confined in the application of thé fact, so much insisted upon, of the non-maturity of the note sought to be set off at the time it came to the possession of the receiver, to the ruling that the Ohio statutes of set-off do not apply, or allow a set-off, except when the debt was due; and that under those statutes the depositor cannot claim the right of equitable set-off as a statutory right or remedy, if one pleases to rely on that distinction; for it does not seem to me to be the intention of the opinion to deny the equitable doctrine of set-off which I have endeavored to outline as applicable to this case. But whether such was the intention or not,

or whether the ruling as to the Ohio statute be correct or not, I shall not here undertake to determine, because, comparatively with those learned judges, I am a stranger to the local laws of Ohio, and they can best decide them. I may properly say, however, and the parties are entitled to this expression of my opinion, that the petitioner is, in my judgment, entitled upon the general equity law to this set-off, unless the principle of that opinion has deprived it of it. That principle I understand to be this: that, notwithstanding this general equitable doctrine of set-off in insolvent estates, the acts of congress in relation to insolvent national banks have abrogated it, and, the statutes of Ohio not providing for it, but only providing for set-off where both debts are due, the set-off cannot be allowed. But I do not understand it to be decided that the general equitable doctrine does not prevail in Ohio; and, on the contrary, I understand that it does, and would be enforced but for the acts of congress in relation to national banks.

I regret exceedingly that I have been unable to reach the same conclusion as to the effect of the acts of congress, and that I cannot dispose of this case by giving judgment in accordance with the opinion of my learned brethren, for whose opinions I have unqualified respect. It seems to me that congress has the same power in providing a system of insolvency for the national banks to abrogate the statute of Ohio permitting a set-off where the two debts are due as it has to abrogate the general equitable law of set-off and insolvency where one of them is not yet mature, and that by the same implications the one is abrogated, if the other has been; wherefore, inasmuch as to allow a set-off under the statute between debts both of which are due would disturb that equality among creditors established by the act, and which belongs to all systems of insolvency, quite as effectually as to allow it in the case of a debt not due, both must go if the implication be well founded, and surely congress did not intend that effect. If it be said that the statutory right of set-off is protected, and its benefits secured, I can only ask by what words of this act of congress has it been done, or by what other act, any more than the general equitable right or remedy has been so secured? The national banking acts do not say anything specifically concerning the right or remedy of set-off anywhere, and congress has not, as in the bankruptcy acts, legislated upon the subject in these acts relating to national banks. Neither are they a complete and perfect system of insolvency like the bankruptcy act, or like our state systems of insolvency, respectively, legislatively declaring and defining the principles of insolvency that shall prevail in winding up the banks. Certain peculiar machinery is provided for winding them up, and some leading provisions are made, such as that note holders and deficiencies due the government shall be preferred claims, and transfers or assignments after the act of insolvency, or in contemplation thereof, shall be prohibited and avoided. Rev. St. §§ 5236, 5242. But it does seem to me a straining of these provisions to imply from them an intention to abrogate all the laws of set-off, legal and equitable, or any part of them. It does not seem to me a necessary implication from the language used; and without express legislative com-

mand I should hesitate to give to these provisions so formidable an effect as to nullify all the equities, and all statutory rights or remedies pertaining to insolvency prevailing in the states merely to exaggerate the equity of equality among creditors, which is, as I have shown, held elsewhere and generally to be subordinate to and not paramount to the equity of set-off in insolvency. It is my judgment that congress intends to leave this subject of set-off in insolvency administration to be regulated by the law of each state, statutory and general, so that the rules of insolvency should be as far as possible uniform in these cases with like insolvencies in that state, and that both the statutory and general law of set-off prevails in each state, unless it may be that in analogy to our general equity system the law of equitable set-off should be held to be uniform in all the states, and the law of legal set-off be regulated under the practice conformity act according to the procedure in each state; for it seems to be rather a matter of remedy than property right, though it is very close to the line, I should think, of that class of rights which are protected as property because they are in the nature of a trust that attaches by insolvency to the assets for a just distribution of them according to the recognized principles of the law of insolvency, everywhere prevailing; like, for example, the trusts relating to decedent's estates. At all events I should not hold our act of congress to have abrogated so important a principle of the administration of insolvent estates as the right of set-off, except upon the most explicit declaration to that effect, or the most imperative implication arising out of the necessities of construction that were equal to explicit enactment. I have not overlooked the position taken by counsel for the defendant, and the cases cited for it that treat the transaction as if it were an assignment of the undue notes to a stranger for value. The receiver is, in my judgment, under the acts of congress, only an insolvency assignee, representing in his relation to the depositors, on the subject of set-off, the bank itself.

But what should be done with this case, entertaining such a difference of opinion as that indicated? Unless the judges are very careful, we should, under the very absurd judicial system which we have, be led into many perplexities and frequent injustice by such differences. Clearly, we are not technically bound to follow each other in a line of precedents as authority, and yet just as clearly we must be careful not to confuse our judicial administration by unnecessary departure in judgment; and the statutory provision for certifying dissents has afforded relief against said departures in many instances, but this is not always available, as it is not here, in the present attitude of this case. But it would be intolerable to have differing rules of set-off in the same court, and in the same insolvent estate or bank; so if I were compelled to decide this case one way or the other, I should unquestionably yield my judgment to that of my brethren, and rule as they have ruled, for conformity's sake. But that case may go to the supreme court, while this cannot, and manifestly that would be unjust to this petitioner. Application has been made to me by letter to withhold judgment, if I should feel bound to rule as my brethren had ruled, and to permit petitioner to

dismiss voluntarily, so that it could seek the state courts, and through that avenue a proper construction of the acts of congress by the supreme court of the United States; but that is unnecessary, if not improper, and I shall dispose of the case by remanding it to the rules for rehearing and reargument before the regular judges, who may, in their discretion, either provide for a dissent of record permitting this case to go to the supreme court by that process, if the party desires, or they might hold up judgment here until the other case has been there decided on appeal, or do whatever to them may seem just and right in the premises. Let them decide it. So ordered.