# CHARLESTON

WILLIAMS, RECEIVER, v. BURGESS *et al.*

Submitted June 17, 1914.   Decided June 30, 1914.

1. BANKS AND BANKING—*Deposits—Set-Off—Action by Receiver—Action on Note.*

    In an action by a receiver, upon a note due an insolvent bank, the maker has a right to set off against the note money on deposit in the bank to his credit at the time the receiver was appointed, notwithstanding the note was not then due, and notwithstanding the bank had pledged it to secure the payment of a debt which it owed, and which was paid out of proceeds of other securities pledged at the same time, and the note returned to the receiver. (p. 625).

2. SAME—*Insolvent Bank—Assets—Obligors on Securities.*

    When the debt of an insolvent bank, thus secured, has been paid out of the proceeds of a portion of the securities, the remaining ones become assets of the bank to be administered by the receiver, and they are subject to the right of set-off in favor of the obligors thereon against the bank, existing at the date of the receiver's appointment. (p. 625).

3. SAME—*Deposits—Set-Off—Receiver of Pledgor—Note Deposited as Security.*

    That the proceeds of a note, thus deposited as security, would have been consumed in payment of the debt, if the pledgee had collected and applied the securities as they became due, does not affect the right of set-off, after payment of the debt and return of the note to the receiver of the pledgor. (p. 625).

Error to Circuit Court, Mercer County.

Action by C. L. Williams, as receiver, etc., against R. L. Burgess and another, partners, etc. Judgment for plaintiff, and defendants bring error.

*Reversed and Remanded.*

*Ross & Kahle,* for plaintiffs in error.

*Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

C. L. Williams, receiver of the Fidelity Banking & Trust Company, recovered a judgment for $536.66 against R. L. and J. K. Burgess, and they were granted this writ of error.

The case was tried by the court in lieu of a jury upon the following state of facts as they appear by the record, viz: On the 11th September, 1911, C. L. Williams was appointed receiver for the Fidelity Banking & Trust Company. Plaintiffs in error then had on deposit in the bank $672.89. They had, on the 22nd May, previous, executed the note of the Burgess Electric Company, a partnership composed of themselves, for $500, payable four months after date to their joint order as individuals, at the Fidelity Banking & Trust Company, and had endorsed and had it discounted by said bank. The Fidelity Banking & Trust Company owed the National City Bank of Baltimore $10,000, payable on the 20th September, 1911, and, to secure its payment, had executed its note and endorsed over to it, as collateral security, a number of notes aggregating $15,279.05. Among the securities so placed in the hands of the Baltimore bank was the Burgess note. In order to prevent a sacrifice of the securities by a sale of them, which, under the terms of their agreement, the Baltimore bank had a right to make, the receiver induced the First National Bank of Bluefield to take up the note together with the uncollected securities, which it did on the 4th October, 1911. At that time there remained unpaid of the principal debt the sum of $6,525.75, and the uncollected securities, among which was the Burgess note, amounted to $14,679.05. The First National Bank of Bluefield collected enough of the securities to pay the balance of the principal debt and about eleven hundred dollars more, leaving the Burgess note and

some others uncollected. This action was brought by the receiver to collect the Burgess note. The Burgesses claimed the right to set-off against it the money which they had on deposit in the bank when it failed, which right was denied by the trial court. Mr. Pollock, vice-president of the First National Bank of Bluefield, in his testimony, when questioned with reference to the interest his bank had in the uncollected securities and the surplus cash remaining after payment of the principal debt, replied: "that is a matter for Mr. Williams (meaning the receiver) to dispose of. I don't know what disposition to make of it." This proves that the Burgess note was an asset of the insolvent bank to be administered by the receiver. The First National Bank of Bluefield had no further claim upon it.

The sole question for decision is, were the Burgesses entitled to the defense of sets-off? We think they were. The authorities are uniform in holding that a depositor may set off his funds on deposit in an insolvent bank against a debt which he owes it, whether the debt is due at the time of insolvency or not. The relation of debtor and creditor exists between a bank and its depositor, and the fact that the bank becomes insolvent before the depositor's note is payable, does not destroy the relation nor affect the right of set-off. 1 Morse on Banks & Banking, (4th ed.), Sec. 338; Alderson on Receivers, Sec. 573; 34 Cyc. 194; 2 Michie on Banks & Banking, 1059 to 1063, and numerous cases cited.

But counsel for defendant in error insist that the facts in this case constitute an exception to the general rule respecting set-off; that the rights of a receiver become fixed as of the time of his appointment; and that the note having been assigned to a creditor of the insolvent bank as security and not having been returned before the receiver's appointment, together with the fact, which it is claimed the record discloses, that if the securities had been collected and applied on the debt, in the order in which they became due, the proceeds of the Burgess note would have been used in the payment of the balance due on the debt which it, with other notes, had been pledged to secure. But we do not think these facts take the case out of the general rule. True the receiver succeeded to

the rights of the insolvent bank, which must be determined by the facts and circumstances existing at the date of his appointment; he can claim no higher right than the bank itself. But what would have been the bank's rights with respect to the Burgess note if it had not become insolvent? The collateral notes never became the property of the Baltimore bank; they were only pledged to it as security and it had only a qualified interest in them. It had a right to collect them as they became due and apply the proceeds on its debt until it was paid, but it did not do so. It assigned its debt, then overdue, to the First National Bank of Bluefield, together with nearly all the securities some of which, including the Burgess note, were also overdue on the 4th of October. The principal debt was due on the 20th, and the Burgess note on the 22nd of September, previous. The First National Bank took over the debt and securities at the request of the receiver in order to prevent a sale of them in Baltimore and a probable sacrifice of the securities. It acquired the rights of the Baltimore bank, no more and no less. The Burgess note was no more subject to off-set in the hands of the First National Bank than it was in the hands of the Baltimore bank. *Davis* v *Noll*, 38 W. Va. 66. Chapter 98A, Sec. 58, serial section 4229; Code 1913. But, on the other hand, it acquired no greater property interest in the paper than its transferrer had, which was the qualified interest of a pledgee, and when the debt was paid with proceeds of other securities, and the Burgess note was left in the hands of the pledgee, it became again the unqualified property of the pledgor. It was then the property of the Fidelity Banking & Trust Company, and the right of set-off in favor of the makers attached as if possession of the note had always remained with the bank. It had never at any time parted with its property in the note, and the right of set-off existed in favor of the Burgesses at the time the receiver was appointed, subject of course to be defeated by a contingency which never hapepned.

The cases cited in brief of counsel for defendant in error do not support the proposition contended for. The case on which they chiefly rely is *Balbach* v. *Frelenghuysen, Rec'r.,* 15 Fed. 675. Complainants in that case had on deposit in the

Mechanics National Bank of Newark over $7000 when the receiver was appointed, and sought to have that sum set-off, pro tanto, against two notes for $15,000 each which they had executed to the bank before its failure which occurred on the 29th October, 1881. The notes were payable respectively on the 19th November, and 13th December, 1881. The right of set-off was denied in that case, because one of the notes was discounted originally by another bank, and had never at any time been the property of the insolvent bank, and the other had been pledged as collateral, together with other securities aggregating $442,000, to secure a large indebtedness which the insolvent bank owed the Mechanics National Bank of New York, and was collected by it and the proceeds used to pay the debt. After the securities had all been collected and the debt paid, there remained a surplus of about $7,000, and plaintiff claimed an equitable lien upon it. But the court held that no such lien existed, and that the receiver could not use the surplus so as to give a preference to complainants over the other creditors. That is a very different state of facts from those here presented. But in the present case the security was not collected by the pledgee, the debt was paid out of the proceeds derived from other securities, and the Burgess note came back into the hands of the receiver, freed of any lien or incumbrance. It was then, as if it had never been pledged, the unqualified property of the insolvent bank, and the Burgesses had the right to set off against it the amount that the bank owed them.

In *Scott* v. *Armstrong*, 146 U. S. 499, which was a case involving the right to set off deposits against a debt due an insolvent national bank, Fuller, C. J., at page 511, in discussing the United States statutes relating to the powers and duties of the Comptroller of the Currency respecting the distribution of assets of insolvent banks, says: "The succeeding statutes were but in recognition, in bankruptcy and otherwise, of the practice in chancery in the settlement of estates, and it may be said that in the distribution of the assets of insolvents under voluntary or statutory trusts for creditors the set-off of debts due has been universally conceded. The equity of equality among creditors is either found inapplica-

ble to such set-offs or yields to their superior equity." See also *Snyder's Sons* v. *Armstrong*, 37 Fed. 18; *Yardley* v. *Clothier*, 49 Fed. 337.

*Clute* v. *Warner*, 40 N. Y. Sup. 392, presents a state of facts almost identical with those in the present case. There the insolvent bank had pledged a note, held by it against one of its depositors together with other securities, to secure a debt which it owed to another bank. The debt was paid, (presumably out of proceeds from other securities, although it does not appear from the report of the case how it was paid), and the depositor's note returned to the receiver. In a suit by the maker of the note against the receiver, the court held that he had a right to have his deposits in the insolvent bank set off against his note. See also the following cases which contain a very thorough discussion of the principle here involved. *Fera* v. *Wickham et al.*, 135 N. Y. 223, and *Hughitt* v. *Hayes*, 136 N. Y. 163.

The finding and judgment of the lower court are set aside and the case remanded for a new trial.

                         *Reversed and Remanded.*