E. L. MORRISON, *Receiver, etc. v.* FAYETTEVILLE BUILDING & LOAN ASSOCIATION

(No. 7379)

Submitted January 24, 1933.   Decided February 24, 1933.

*Hubard & Bacon,* and *Conley & Klostermeyer,* for plaintiff in error.

*W. L. Lee* and *Dillon, Mahan & Holt,* for defendant in error.

LITZ, JUDGE:

This is a notice of motion for judgment by E. L. Morrison, as receiver of the Bank of Fayette, against the Fayetteville Building & Loan Association, a corporation, to recover the withdrawal value of stock owned by the bank in the association. Judgment for defendant was rendered on an agreed statement of facts, as hereinafter recited, and plaintiff prosecutes error.

January 26, 1931, the commissioner of banking closed the Bank of Fayette because of insolvency, and on March 5th, following, appointed Morrison receiver. It owned 106 shares

of "paid up" stock in the Fayetteville Building & Loan Association, of the par value of $100.00 each, and owed the association, as one of its depositors, $24,127.24. The by-laws of the association permit a stockholder, by giving four weeks notice, to withdraw the par value of his stock, provided not more than 50% of the net income of the association shall be used in paying the withdrawal, and authorize the board of directors to require the surrender of all paid-up stock certificates by. paying to the holders the face value thereof, plus accumulated dividends. The receiver, by written notice to the association, March 14, 1931, demanded the withdrawal value of the stock. It refused to comply, contending that it was entitled to set-off against the debt, an equal amount of the claim due it as a depositor of the bank.

The right of set-off thus asserted must be determined from the mutual status of the bank and the association at the time the receiver was appointed. The receiver of an insolvent bank succeeds to the rights of the bank, "which must be determined by the facts and circumstances existing at the date of his appointment; he can claim no higher right than the bank itself." *Williams* v. *Burgess,* 74 W. Va. 623, 82 S. E. 507. This court held in that case that a depositor was entitled to set-off his deposit against his indebtedness to the bank represented by a note which, at the time of the appointment of the receiver, had not matured. This ruling is in accord with the current of authority. "Even though the indebtedness of the depositor of the bank at the time * * * a receiver is appointed (for the bank) is not due, according to the prevailing view the depositor is entitled to have his deposit applied to the payment of the indebtedness, * * *." 3 R. C. L. 529. The same rule is announced in 7 C. J. 746, and 14 R. C. L. 655.

The member of a building and loan association is not a creditor of the association, in the sense of being able to enforce his right of withdrawal, before the maturity of notice (or at least the filing thereof), of his election to demand the withdrawal value of his stock. 9 C. J. 941; 4 R. C. L. 357; 35 L. R. A. 290 (note); and Thompson and Blackledge on Building & Loan Associations, p. 335. It would seem, however, that he is, prior to notice, such creditor of the associa-

tion as will entitle it, in the event of his insolvency while indebted to the association, to set-off against the withdrawal value of the stock his indebtedness to it.

Building & Loan Association v. County Court, 42 W. Va. 818, 26 S. E. 203, holds that the capital stock of a building and loan association should be assessed to its members and not to the association, upon the theory that shares in such corporation constitute evidence of indebtedness from it to the members. In the opinion, written by Judge Brannon, it is stated: ''Let us look at the character of building associations under Code, c. 54. It is a peculiar corporation markedly different from the ordinary joint stock company. It has the right to sell to its stockholders bidding the highest premiums, the money accumulated from time to time. How does this money accumulate? By collecting from stockholders periodical dues upon shares of its stock, and interest collected from members to whom loans are made—that is, interest on the par value of the shares so loaned—and by imposing fines for failure to pay periodical dues, or comply with any other obligation or duty to the corporation. I see no provision for income otherwise; no provision for loans to others than members; no provision for other business than by such membership, and, as flowing from it, the right to borrow of its money, 'to encourage industry, frugality, and home building and saving among its members.' It has no business save this. It does not carry on commercial or manufacturing business. Persons associate, take shares, pay them in small dues from time to time, borrow this same money to build homes with, mortgaging it, and discharging the mortgage in a certain period by such payments. The object is not to make gains by way of profits. The shares do not participate in profits distributed as dividends, nor at dissolution do they participate in assets. And there is a feature differing from shares in banks, railroad, and other joint stock business companies; that is, the shareholder can at any time draw out what he has paid in, and its proportionate share of earnings by way of interest and fines. Thus, the members may at any time claim specific sums out of what is the only thing which could be at all called 'capital.' They may draw all of it out, and thus end it. Not so as to joint stock companies. It is thus a debtor to its stockholders, and,

while the stockholders are debtors to it, yet, whenever the stockholder chooses to close that relationship of debtor to the company, he can withdraw, and take with him all he paid in. The company owes its members (miscalled 'stockholders') all it has. They have deposited with it, and may withdraw their deposit any time. * * * In *Deniston* v. *Terry*, 141 Ind. 677 (41 N. E. 143), the court said: 'The stockholder who is simply a lender to, or a creditor of, the association holds his stock as evidence of such credit, just as he might hold the note or other obligation of the association. Whether, in fact, he holds a certificate of stock or not, or whatever evidence there may be of such credit, can make no difference. He is an actual creditor. The law looks through names, and sees the things which the names stand for. Such a credit, therefore, by whatever name it may be called, or however it may be evidenced, is taxable under the Constitution as any other credit. All building and loan stock, unless it be that held by borrowers, is taxable. Under the law the stock or shares are to be charged to the holder of the stock, and the tax paid by him, not by the association.' I think this suits our statute. The features of the Indiana law and ours which cast this question are kindred. Indeed, these building associations generally have features mainly alike. 2 Am. & Eng. Enc. Law, 623.''

The Colorado statute provides that in making up the amount of credits which any person is requested to list for taxation he shall be entitled to deduct from the credits all bona fide debts owing to any other person. HELD, that, where a savings association issued stock to its members, which was payable to the stockholders, with profits or dividends, on demand, subject only to the association's rights to limit the aggregate withdrawals during any one month to one-half the amount received by the association in the same period, such stock was a debt of the association, which it was entitled to deduct from its credits in determining the amount of its taxable property. *Board of Commissioners* v. *Fidelity Savings Association* (Colo.), 71 P. 376.

In Indiana, the statute, relating to corporations in general, makes all stock, except as otherwise provided by law, taxable in the corporate name. A section thereof provides that building, loan-fund, and savings associations shall be assessed on

the surplus of receipts over loans, and declares that neither said association nor the stockholders therein shall be liable to other taxation on said shares of stock. HELD, that this was not a limit on the right to further tax the holders of stock, or those to whom building associations were indebted, and that it was proper to tax a nonborrowing member for his holdings, which are in the nature of a credit, and it was immaterial whether the stock was fully paid up. "It is quite clear, we think, (the court said), that one who deposits his money with an association subject to call at any time upon reasonable notice, and who may receive the interest upon or earnings of the money so deposited, is a creditor to the extent of such deposit and interest or earnings, and, although his credit may be evidenced by a certificate of stock or other writing, he is nevertheless a creditor, and his holdings, whatever called or however evidenced, constitute a credit." *Harn* v. *Woodard* (Ind.), 50 N. E. 33.

The Massachusetts statute, creating co-operative saving and loan associations, provided that the shares of stock shall be paid for in monthly installments, and that when the amount paid in by any member reaches $200.00, the shares shall be paid off; and that members may withdraw unpledged shares at any time upon giving thirty days' notice. In *Atwood* v. *Dumas* (Mass.), 21 N. E. 236, it was held that shares of stock, on which had been paid $63.00, were subject to trustee (or garnishment) process. In the opinion, written by Justice Holmes, (afterward associate justice on the Supreme Court of the United States,) it is stated: "* * * the interest of the member of a corporation of this kind is of a peculiar nature, and it does not follow, because the defendant is a member, that she may not be a creditor also in respect to her money paid in, subject to any lawful deduction incurred under the statute. * * * 'a member may withdraw his unpledged shares at any time by giving 30 days notice.' That is to say, the member has a right to demand back the money he has paid to the corporation, together with any profits which may have accrued, deducting fines and his share of losses, and this right is one of the terms on which he paid. At the same time he has no claim to a specific fund. The money which he pays in becomes the money of the corporation, as in the case of a banker

\* \* \*. So far the relation between the corporation and the defendant is that of debtor and creditor, or at least constitutes a contractual or *quasi* contractual obligation to pay money, whatever name it may be called in the statute. \* \* \* The fact that the defendant had not given the required notice does not affect the question."

The Illinois statute provided that a shareholder of a building and loan association might at any time, upon proper notice, withdraw and demand and receive from it the withdrawal value of his stock; and further that "no share shall be transferred while any debt, penalty or due of any kind, against the owner thereof, may remain unpaid". In *Wetherell* v. *Thirty-First Street Building & Loan Association,* 153 Ill. 361, 39 N. E. 143, a stockholder of a building and loan association had made a general assignment for the benefit of creditors while indebted to the association as a private banker in the sum of $10,325.90. He owned unpledged stock in the association of the withdrawal value of $10,530.37. The court held that the association was entitled to set off against the withdrawal value of the stock the deposits held by the assignor at the time of the assignment. We quote from the opinion in the case as follows: "It is urged by the assignee, that as the withdrawal took place after the assignment, a new right was created in his favor, as assignee, and one which was not subject to set-off in favor of a money demand against the insolvent assignor accruing prior to the assignment. This claim ignores the marked difference that exists between stock in a building and loan association organized under our statute, and stock in an ordinary corporation. \* \* \* The duty of \* \* \* (the) assignee, was confined to converting the property assigned to him into money, and distributing the proceeds among the creditors according to their respective rights. That which he did by way of withdrawal from the association was not the creation of a new right in him, as assignee, but was a mere mode of disposing of and realizing upon the property and assets that had been assigned to him. The stock was, prior to the notice of withdrawal, a money demand, in substance and in fact, and the effect of the withdrawal was to expedite the time of payment, and fix the amount due."

We agree with the holding in the foregoing cases that the right of a member of a building and loan association to withdraw the value of his stock constitutes a promise on the part of the association to pay money, although contingent upon the giving of notice by the member of his election to exercise the right, and upon the further provision that not more than one-half of the net income of the association shall be used in paying withdrawals. There is no apparent difference in principles between this case and *Williams* v. *Burgess,* cited. In each, the bank, at the time of the appointment of the receiver, held an undue promise, to pay money, of the depositor asserting the right of set-off.

We, therefore, affirm the judgment of the circuit court.

*Affirmed.*