FRENCH, RECEIVER *v.* COMMERCIAL WALL PAPER MILLS, INC.

[No. 14,906.   Filed October 16, 1935.]

574

*Bomberger, Peters & Morthland,* for appellant.
*Wilson & Wilson,* for appellee.

BRIDWELL, J.—Appellant brought this action against appellee seeking to recover the balance due on a promissory note executed by appellee to the First Trust & Savings Bank, Hammond, Indiana, now an insolvent bank, of which appellant is receiver. Appellee filed an answer of general denial to the complaint, and, in addition thereto, a plea of set-off, alleging that said bank was, at and prior to the time that it closed its doors and a receiver was appointed for it, indebted to appellee for and on account of a "commercial checking account," and praying that the amount of such account be set off against any amount found due on its note. Appellant filed its answer to the plea of set-off, which answer, omitting its formal parts, is as follows:

"That the note sued on in plaintiff's complaint herein was neither owned nor possessed by First Trust & Savings Bank on February 2nd, 1931, the day on which said First Trust & Savings Bank closed its doors as insolvent, nor was said note sued on in plaintiff's complaint herein transferred by First Trust & Savings Bank to the Receivers as appointed by the Lake Superior Court on February 27th, 1931; that said note sued on herein was acquired by the receivership herein by purchasing from the Continental Illinois Bank and Trust Company long after the closing of said bank and long after the appointment of the Receivers herein and their taking possession of the assets thereof as such receivers; that said note was acquired by the Receivership herein by purchase as an asset of the

Receivership and not as an asset of the First Trust & Savings Bank."

To this answer to the plea of set-off appellee filed reply in general denial. Upon the issues thus formed the cause was submitted to the court for trial, and there was a finding that appellant was entitled to a judgment against the appellee on the promissory note sued upon in the sum of $1863.31, and for the appellee on its plea of set-off that it was entitled to a set-off against appellant in the sum of $1863.31, and that "same should be allowed." Judgment was rendered pursuant to the finding, that appellant take nothing by reason of his complaint and that appellee recover its costs. In due course appellant filed motion for a new trial, assigning as causes therefor, that the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law. This motion was overruled, and appellant excepted. This appeal followed, the error assigned and relied upon for reversal being alleged error in overruling said motion.

The evidence in this case is not conflicting, and it appears therefrom, that on and prior to the second day of February, 1931, the First Trust & Savings Bank, Hammond, Indiana, was engaged in a general banking business in the city of Hammond, Indiana, and was a member bank of the Federal Reserve System; that appellee was a customer of said bank, being one of its depositors and also a borrower of money at different times; that on November 10, 1930, appellee secured a loan from said Bank for $10,000, and executed its note therefor, due February 9, 1931; that on December 5, 1930, said bank, by written application to the Federal Reserve Bank of Chicago, sought and secured the rediscount of notes held by it aggregating $146,000, among which was the note of appellee herein sued upon; that said Federal Reserve Bank, upon re-

discounting said notes, credited the account of said First Trust & Savings Bank with the amount of the notes rediscounted, less the rediscount rate which was 2½ or 3 per cent. at that time; that the rediscount notes were all endorsed by the First Trust & Savings Bank, and no written instrument other than the "application for rediscount" was given to the Federal Reserve Bank as a part of this transaction. In its application for rediscount the First Trust & Savings Bank granted to said Federal Reserve Bank authority as follows: "You are authorized to charge to our account at maturity, all paper rediscounted by us, and to charge to our account at any time hereafter, any paper which you may determine ineligible or deem undesirable for any reason," and stated the liability of the bank as of the date of the application "for borrowed money, exclusive of this offering," at $993,000. On January 3, 1931, the said two banks entered into an agreement for the deposit of collateral by said First Trust & Savings Bank with said Federal Reserve Bank, and, on that date notes aggregating in amount the sum of $134,553.50, were deposited with said Federal Reserve Bank as collateral security for the payment of every liability, "either direct or contingent, now owing, or which may hereafter be owing, whether now or hereafter contracted," with the right on the part of the Federal Reserve Bank to, at any time, call for additional security of such kind and value as would be satisfactory to it, and in this agreement the Federal Reserve Bank was authorized to enforce the collection of said security so deposited, and to apply the proceeds to the payment of any liability of said First Trust & Savings Bank to it. The note in suit was at that time held by said Federal Reserve Bank and bore the endorsement of said First Trust & Savings Bank, and was carried as an asset of said last

named bank on the opposite side of the ledger showing its rediscount liability.

The evidence further discloses that the First Trust & Savings Bank was, on the 6th day of January, 1931, indebted to the Continental Illinois Bank and Trust Company of Chicago, Illinois, in a sum in excess of $700,000, for money borrowed, and on said date it executed to said Continental Illinois Bank & Trust Company a written assignment of certain property rights held by it which, in part, is as follows:

"WHEREAS, the undersigned is now indebted to Federal Reserve Bank of Chicago, and to secure its indebtedness to said Federal Reserve Bank of Chicago it has on deposit with said Federal Reserve Bank of Chicago sundry collateral, and the undersigned is willing to assign to said Continental Illinois Bank and Trust Company all its right, title and interest in and to all said collateral and/or other property or rights held by said Federal Reserve Bank of Chicago,

"NOW, THEREFORE, in consideration of said loans so made and to be made by said Continental Illinois Bank and Trust Company to the undersigned, and in consideration of the sum of One Dollar to the undersigned in hand paid by Continental Illinois Bank and Trust Company, the undersigned does hereby sell, assign, transfer and set over, *as security for* the payment of any and all indebtedness now owing and/or which may hereafter be owing by it to said Continental Illinois Bank and Trust Company, all its right, title and interest in and to all said collateral now deposited with said Federal Reserve Bank of Chicago and all property of whatsoever kind now held by said Federal Reserve Bank of Chicago belonging to or in which the undersigned has any interest of any kind whatsoever, *including all rediscounts* and/or balances of whatsoever kind; and the undersigned does hereby give to said Continental Illinois Bank and Trust Company full power and authority, for its own use and benefit, to demand, collect and receive, either in its own name or in the name of the undersigned. from said Federal Reserve Bank

of Chicago all of said collateral and/or property, *including such rediscounts* and/or balances; all subject, however, to any claim that the said Federal Reserve Bank of Chicago may have in and to said collateral with and/or said property (including such rediscounts and balances) held by said Federal Reserve Bank of Chicago on account of any indebtedness owing by the undersigned to said Federal Reserve Bank of Chicago." (our italics)

On the second day of February, 1931, the First Trust & Savings Bank failed to open its doors for business, and, thereafter, in an action brought in the Lake Superior Court, it was declared insolvent, and on February 27, 1931, receivers were appointed to take charge of said bank.

At the time the bank closed its doors it was indebted to appellee on account of money deposited in said bank, in the sum of $1863.31, and the note in suit was held by said Federal Reserve Bank. During the course of the administration of the receivership estate, all liability of the First Trust & Savings Bank to the Federal Reserve Bank was paid by the receiver, and, thereupon, on April 15, 1931, the note in suit was turned over by said Federal Reserve Bank to the Continental Illinois Bank and Trust Company, which held the same, together with other collateral given by said insolvent bank to secure its indebtedness to said Continental, etc., Bank, until July 7, 1931, when all liability of said insolvent bank to said Continental, etc., Bank was paid by the receiver, and such collateral as was held by said Continental, etc., Bank, among which was the note executed by appellee and here in suit, was thereupon delivered to the receiver. Prior to the bringing of this action, appellee had made payments on the indebtedness evidenced by its said note until the balance due was as found by the court.

Appellant contends that when, on December 5, 1930,

the said First Trust & Savings Bank rediscounted, together with other paper, the note given to it by appellee, that the transaction was in legal effect an unconditional sale of such note to the Federal Reserve Bank of Chicago, and, further, that when, on July 7, 1931, the said note was delivered to him as receiver by the Continental Illinois Bank and Trust Company, upon the payment by the receiver of all the insolvent bank's liability to it, he acquired such note by purchase and free from any equities or defenses that appellee might possess.

After a careful examination and consideration of the evidence in this case, we are of the opinion that the court below was fully justified in reaching the conclusion it evidently did reach that there was no sale of the note but merely a pledge thereof as collateral to secure in part the loan made when the Federal Reserve Bank received and acted favorably upon the application for rediscount. None of the parties treated the transaction as a sale. The Federal Reserve Bank held the note in its possession until April 15, 1931, when it delivered said note to the Continental Illinois Bank and Trust Company, the receiver having paid the Federal Reserve Bank all indebtedness due it from said First Trust & Savings Bank. This action of the Federal Reserve Bank was presumably taken by reason of the assignment made to said Continental, etc., Bank by the insolvent bank on April 6, 1931, as there is nothing in the evidence tending to indicate that the Federal Reserve Bank expected or received from the Continental Bank any consideration for such note. The Continental Bank then held the note until the insolvent bank through its receiver paid to it all indebtedness due, whereupon it delivered such note to said receiver. The conduct of the parties involved in the handling of this note as disclosed by the undisputed evidence, seems

to prove conclusively that the note, from the time it left the possession of the First Trust & Savings Bank until it was delivered to the receiver of said bank, was possessed and held only as collateral.

Another contention of appellant is that the right to a set-off must be determined by the state of affairs as they existed at the time the bank closed its doors and receivers were appointed therefor, and that since appellee's note was not held by the insolvent bank at this time that there was no mutuality of debts, and the set-off was, therefore, not allowable. In the instant case, however, each debt was in existence at the time the bank was closed, and when the receiver herein redeemed the collateral held by the Continental Illinois Bank and Trust Company, and received this note, among others, such note was an asset of the insolvent estate subject to the right of any set-off existing, the same as if it had remained in the possession of the insolvent bank at all times.

In the case of *Ellerbe* v. *Studebaker Corp.* (1927), 21 Fed. (2nd.) 993, 997, where the question was raised as to the right of set-off, the court, with reference to such right, said:

"And we do not think that it makes any difference that the note had been pledged to the Federal Reserve Bank and was held by it as security at the time the bank failed. Of course, if the note had been collected by the bank as pledgee, the deposit of Chandler, Inc., could not have been set off against it; . . . Even though the note was held under a pledge at the time of the bank's failure, as soon as it was redeemed by the receiver it became subject in his hands to a set-off to the extent of the deposit standing to the credit of the maker upon the books of the bank, just as though it had never been pledged . . . The rule that the rights of the parties become fixed when the bank closes its doors means that a debtor of the bank cannot set off a claim acquired after insolvency against a

debt .contracted before. It does not mean that he cannot set off his deposit against a note owned by the bank and collected by its receiver merely because at the time of the bank's failure the note was held by another bank to which it had been pledged as collateral."

See also, *Miles* v. *Bossert* (1930), 92 Ind. App. 10, 173 N. E. 656; *Williams, Rec.,* v. *Burgess* (1914), 74 W. Va. 623, 82 S. E. 507, 508; *Schaeffer* v. *Ruden, Supt. of Banks* (1932), 61 S. D. 64, 246 N. W. 105; *Hughitt* v. *Hayes* (1892), 136 N. Y. 163, 32 N. E. 706; *Scott* v. *Armstrong* (1892), 146 U. S. 499, 13 S. Ct. Rep. 148, 36 L. Ed. 1059.

Whether appellee had the right to set off the amount of its deposit as against either of the two banks which for a time held possession of the note here sued upon, had either bank sought to enforce collection while said note was in its possession, need not be decided as such question is not presented by this record.

The court did not err in overruling appellant's motion for a new trial as the evidence is sufficient to sustain the decision of the court, and such decision is not contrary to law.

Judgment affirmed.