MERCHANTS' ICE & FUEL COMPANY, APPELLANT, v. HOLLAND BAKING COMPANY, RESPONDENT.*

Springfield Court of Appeals. July 20, 1928.

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, section 240, p. 596, n. 17; section 350, p. 652, n. 80; section 480, p. 727, n. 97.

*Arch A. Johnson* and *F. M. McDavid* for appellant.

*Roscoe C. Patterson* and *Orin Patterson* for respondent.

BAILEY, J.—This is a claim for preference filed by appellant corporation with the commissioner of finance in charge of the Holland Banking Company, which bank failed and was closed January 15, 1924. The claim was referred to the circuit court of Greene county for its determination, as provided by sections 11718 to 11722, inclusive, Revised Statutes 1919, and is in the nature of an equitable action or interplea. No question arises on the pleading. At the close of the evidence the trial court, upon request of appellant, made a finding of facts which is as follows:

"The court finds the facts to be that at the time the Holland Banking Company was closed by the finance commissioner, said bank being then insolvent, that the Merchants Ice & Fuel Company had on deposit the sum of $3761.17; and that on November 23rd, 1923, said company had borrowed the sum of $5000 from said bank, giving its promissory note due ninety days thereafter, that prior to the closing of the said bank it, the said Holland Banking Company, had borrowed of the Mechanics & Metals National Bank of New York City, on notes signed by the officers of the Holland Banking Company, the sum of $400,000, that the money was borrowed on a regular collateral note, and various notes held by the Holland Banking Company aggregating the sum of $400,000 were pledged as security to said New York Bank, among which notes so pledged was the $5000 note of the Merchants Ice & Fuel Company; that at the time the Holland Banking Company closed it had on deposit with said New York Bank cash to the amount of $108,000.

"The court further finds the facts to be that shortly after the Holland Banking Company was closed, and before its $5000 note became due, the Merchants Ice & Fuel Company, through its secretary and treasurer, inquired of the deputy finance commissioner in charge of said Holland Banking Company, if their $5000 note was in the bank and was told by said commissioner that this note had been sold and was owned by the New York Bank.

"The court finds that this inquiry was made for the purpose of offsetting that company's deposit in the Holland Banking Company against said note.

"The court further finds that in making such inquiry the secretary and treasurer of the company was acting upon the advice of counsel to the effect that if said New York Bank held said note as collateral to the indebtedness of the Holland Banking Company that a set-off could be obtained, but that if the New York Bank had purchased said note and was the owner thereof that such offset could not be had.

"The court finds that said Merchants Ice & Fuel Company believing the statement of the said deputy finance commissioner that its note had been sold and was owned by the New York Bank, and relying upon such statement, upon the maturity of said note paid the same to the New York Bank.

"The court further finds that in the year 1925, said New York Bank collected its note and interest thereon in full from the collateral, including said deposit, and returned to the commissioner of finance in charge of the Holland Banking Company notes aggregating $108,000, and that prior to the month of September, 1925, said finance commissioner in charge of said bank had collected from the notes so returned from said New York Bank and formerly held as collateral to the said $400,000, a sum in excess of $35,000.''

Thereafter the court gave judgment against the claimant dismissing its claim and this appeal followed. This court heretofore rendered an opinion, reversing and remanding the cause, but in due time sustained defendant's motion for rehearing for reasons hereinafter discussed.

We believe the evidence fairly justified the finding of facts made by the learned trial judge as above set forth. In addition to that finding, however, some other circumstances were shown which we deem of some importance. The claimant, Merchants Ice & Fuel Company, received a certificate from the commissioner of finance in charge of the Holland Bank after it closed, showing the amount of its deposit with that bank. Thereafter claimant collected forty per cent on this certificate from the McDaniel National Bank and endorsed the certificate to the McDaniel National Bank as security for the advance payment. At the time of the trial that certificate was being held by the McDaniel Bank. It also appears that there was no one among the bank's patrons similarly situated to claimant; that is, there was no other depositor whose note had been placed as collateral with the New York Bank who also had a deposit in the Holland Bank at the time it closed and had thereafter paid his note to the New York Bank, as did claimant. The record shows that two depositors of the Holland Bank had offset their deposits against their notes previously held as collateral by the New York Bank but returned to the commissioner in charge of the Holland Bank, after the indebtedness to the New York Bank had been paid.

This case primarily involves the right of a depositor to set off the amount of his deposit in an insolvent bank against his note given to that bank. Had the note of claimant been held by the Holland Bank at the time the commissioner took charge, the right of set-off would of course have been complete. [Aab v. French, 279 S. W. 435, l. c. 437, and cases cited.]

The facts under consideration, however, complicate the question to an unusual degree. These facts may be briefly summarized as follows: The $400,000 borrowed from the New York Bank by the officers of the Holland Bank was used by the latter bank and not by the individual officers who signed the note; when the Holland Bank failed claimant had on deposit therein about $3700, and its $5000 note to the Holland Bank was in the hands of the New York Bank,

placed there, with other notes, ostensibly as collateral to the $400,000 note executed by the officers of the Holland Bank; these collateral notes in the aggregate equalled the amount of the officers' note to the New York Bank; under the mistaken belief, induced by a statement made to the claimant herein by the bank commissioner in charge of the Holland Bank that the New York Bank owned claimant's $5000 note, the claimant paid the New York Bank the amount due thereon when its said note became due; the Holland Bank, at the time it closed, had on deposit with the New York Bank $108,000, which amount was applied by the New York Bank on the $400,000 note of the officers; as a result of that application of funds the New York Bank returned $108,000 in notes to the Holland Bank; several depositors of the Holland Bank were allowed to offset their deposits against their notes included in those so returned by the New York Bank; the commissioner thereafter collected about $35,000 of the notes returned; claimant has received forty per cent of its deposit from the McDaniel Bank, turning over as security its certificate showing the amount it had on deposit with the Holland Bank. There is no evidence that the board of directors of the Holland Bank authorized the officers of that bank to deliver claimant's note to the New York Bank as security for the $400,000 note of said officers. Under such circumstances is claimant lawfully entitled to a preference?

The particular question here involved has never been before the appellate courts of this State. There are certain well-established rules of law, however, which are applicable. When the commissioner of finance took over the assets of the Holland Bank he occupied the same position as that bank relative thereto, i. e., subject to all sets-offs and equities based on liabilities of the bank existing at the time he took charge. Any such rights of set-off would not be affected by reason of the fact that the indebtedness to the bank of the party claiming the set-off, as was true in this case, had not matured at the time the bank was taken over. [Smith v. Spengled, 83 Mo. 409; Huse v. Ames, 104 Mo. 91, 15 S. W. 965; Storts v. Mills, 93 Mo. App. 201; Storts v. George, 150 Mo. 1, 51 S. W. 489.]

Plaintiff advances the theory that since the funds in the hands of the finance commissioner have been augmented to the amount of $108,000 by the excess of collateral returned by the New York Bank to which plaintiff has contributed to the amount of the note paid without protest but under a mistake as to the facts, that on general principles of equity, it is entitled to be repaid from the fund in the hands of the commissioner to the extent of its deposit. Plaintiff admits there is no authority in this State upholding such proposition. Two cases from sister States are cited however, which unquestionably support plaintiff's position. In Seymour v. Becker, 73 N. W. 1096

(Minn.), a similar state of facts arose, which are clearly stated in the syllabus of the case as follows:

"B made his note for $500 to the Bank of M, which pledged it, with other collaterals which it also owned, to the Bank of S, to secure a loan then made to it. The collaterals so pledged were of the value of three times the amount of the loan they secured. M became insolvent, closed its doors, and the appellants herein were appointed receivers of its estate. B then had on deposit on open account with M $170, and when his note matured he paid it to the pledgee, except a balance of $170, which he claimed was offset by his deposit. The pledgee refused to recognize his claim, and insisted on the payment of the balance, which B paid under protest. The pledgee, after paying its loan from money realized from the collaterals, returned to the receivers two-thirds in amount and value of the original collaterals."—The Supreme Court of Minnesota, in holding the depositor had a right to reimbursement states that: "It is certain that, if the Bank of Minnesota had retained the respondent's note he would have been entitled to set off the amount of his deposit against it. [Trust Co. v. Leck, 57 Minn. 87, 58 N. W. 826; Stolze v. Bank (Minn.) 69 N. W. 813.] When the note was transferred to the pledgee as collateral security, any right of offset then or thereafter existing was impaired, but only to the extent necessary to satisfy the debt of the pledgee; and if the latter had returned the note to the receivers unpaid, to the amount of $170.90, general creditors of the insolvent would have had no interest therein, for the respondent's right to offset his deposit would then have been perfect, and it and the note would have cancelled each other. Or, in other words, all of the collateral notes (which were approximately of a value three times as great as the debt they secured) were the property of the receivers, subject to the payment of the debt of the pledgee, and subject, further to the equity of the respective makers thereof who had deposits with the insolvent bank to offset them against these notes, as against the receivers' interest therein; hence general creditors had no interest in the collaterals until the claim of the pledgee and such equity of the respective makers were satisfied. No claim is made that any of the makers of the collateral notes had any equity superior to that of the respondent, and he was equitably entitled to have left unpaid on his note in the hands of the pledgee a sum equal to his deposit, so that when the note was returned to the receivers his offset would be available, unless its payment was reasonably necessary to protect the interests of the pledgee."—"In its last analysis, this case is simply one where the receivers have obtained, not from the assets of the insolvent, but from the respondent, through and by the act of the pledgee, $170.90, which does not equitably belong to them, or to the general creditors. If the receivers are required to repay this sum to respondent, a wrong will be righted,

and no injustice done to others. Equity regards that done which ought to have been done, and in this case it will treat the unpaid balance of $170.90, due on the respondent's note as offset by his deposit of equal amount, and regard his payment of $170.90, on the note, as against the receivers, as having been made to them, through and by the act of the pledgee, under protest, and without consideration, and require them to repay the amount from the fund in their hands arising from the returned collaterals, which was increased *pro tanto* by such payment.''

The case of Hall v. Burwell, 124 Pac. 751 (Col.), cited by plaintiff, follows the Minnesota case. We quote from the syllabus in the Hall case as follows:

''A depositor in a bank executed a note to it, which it pledged with other notes as security for a loan to it. The bank became insolvent, and a receiver was appointed, and the depositor filed his claim for the amount of his deposit, and paid the note held by the pledgee, on obtaining an order of court that the payment should not prejudice his rights. Held, that the receiver, in paying out the proceeds of the returned pledges, must pay the depositor *pro rata* with other depositors similarly situated, according to the amount of their several deposits.''

We are much impressed with the equity and justice of those decisions. In this case it seems that other depositors, whose notes were returned to the commissioner of finance by the New York Bank, were enabled to offset their deposits against their notes. The reason their notes were returned, while the note of plaintiff was collected, does not appear. It may have been because their notes were not due at the time; it may have been because the New York Bank was unable to obtain service of process upon them; it may have been because the New York Bank, in its discretion, decided not to attempt to collect their notes; or it may have been for a variety of other reasons. The point is, that with their notes held as collateral by the New York Bank the same as plaintiff's, yet by reason of the return of their notes to the commissioner of finance, they were allowed to offset their deposits against their indebtedness. It is an equitable maxim that ''equality is equity.'' When assets are to be distributed those having equal rights should share equally. We are unable to perceive any material difference between plaintiff's position and that of those whose notes, put up as collateral with the New York Bank, were returned and their set-offs allowed. Had plaintiff not paid its note more of the other collateral notes would necessarily have had to have been collected in order to liquidate the indebtedness to the New York Bank. The evidence shows that more than $35,000 has been collected on the notes returned to the bank commissioner by the New York Bank. If plaintiff had paid its note under protest, as was done in the Minnesota case, this case would be on all fours with that

case. There can be no serious doubt that had plaintiff's officers known that plaintiff's note was held by the New York Bank as collateral it would have refused payment or at least have protested the payment. The statement of the commissioner of finance or his agent that the note was actually sold to the New York Bank would naturally tend to mislead plaintiff as to its rights in the premises. It was a mistake of fact by which plaintiff would not be bound. We are drawn to the conclusion that on general principles of equity, plaintiff should be reimbursed out of the funds in the hands of the commission derived from the collateral notes returned by the New York Bank to the amount of its deposit because of its right to offset its deposit against its note to the Holland Bank.

Defendant has cited a number of cases as opposed to the rule announced in the Becker and Hall cases, supra. The only case cited which we deem in direct conflict with those cases is that of Balbach v. Frelinghusen, 15 Fed. (N. J.) 675. It was held in that case that a depositor in an insolvent bank could not offset his deposit against his note when that note had been placed as collateral with another bank and was collected by that bank which, after liquidating its indebtedness, returned a small amount of money derived from the collateral to the receiver of the insolvent bank. No authorities are cited in support of the proposition and the equities of the parties are not given consideration. We believe the Minnesota and Colorado cases announce the more equitable doctrine.

Defendant further contends that even though the rule announced in the Minnesota case is sound, the principle has no application to the instant case because, (1) the plaintiff here had assigned his deposit debt to the McDaniel Bank and (2) because the securities in this case were not in excess of the principal indebtedness, as they were in the Minnesota case. As to the first point, the evidence does not show that plaintiff assigned its deposit claim to the McDaniel Bank. The trial court made no finding on that point. We gather from the evidence that the McDaniel Bank has a lien on the certificate of deposit to the amount of forty per cent thereof. Upon what basis or with what understanding it advanced forty per cent of the amount of plaintiff's deposit does not clearly appear. There is nothing to indicate that plaintiff has parted with its interest in its deposit claim. It simply turned over to the McDaniel Bank a certificate indicating the amount of its deposit as security for the money advanced. We do not believe that fact, standing alone, amounted to an assignment of its claim. Such a transaction would be no bar to the maintenance of this suit. [Van Idour & Co. v. Nelson, 60 Mo. App. 523; Commission Co. v. Albero Com. Co., 244 Mo. 38, 147 S. W. 1065.]

As to the second proposition, it is clear that the total securities held by the New York Bank at the time the Holland Bank closed were in excess of its indebtedness, to the amount of $108,000. It is

true a part of that excess consisted of money on deposit and not collateral notes. The result was the same and we are unable to discover any essential difference between this case and the Minnesota case on that theory.

It is also urged that the debt to the New York Bank was not an indebtedness of the Holland Bank but was the individual debt of its officers who signed the note. It is said that under the plain language of sections 11752 and 11762, Revised Statutes 1919, the sole power to issue its note, or to pledge the notes of the Holland Bank received by it for money loaned, is vested in the board of directors of that bank; that any pledge of such notes by officers of the bank without the previous authority of the directors is void. That portion of said section 11762 applicable to this case is as follows:

"The cashier or any other officer or employee shall have no power to indorse, pledge or hypothecate any notes, bonds or other obligations received by said corporation for money loaned until such power and authority shall have been given such cashier or other officer or employee by the board of directors, a written record of which proceeding shall first have been made.—And all acts of indorsing, pledging and hypothecating done by said cashier, or other officer or employee of said bank, without the authority from the board of directors, shall be null and void."

Section 11752 provides that no bills payable shall be rediscounted by the bank except with the consent of the board of directors. As heretofore stated the record does not show the board of directors consented in writing to the making of the $400,000 note to the New York Bank nor to the pledging of the bank's notes, including plaintiff's, as security for said principal note. Under the authority of Union National Bank v. Lyons, 220 Mo. 538, 119 S. W. 540, there can be no doubt that the making of the original note for $400,000 and the pledging of the collateral notes was void, under the statute, in the absence of the required authority from the board of directors. But the trial court found this to be a bank transaction. Every circumstance in the case tends to establish that fact. The Holland Bank received the entire proceeds derived from the $400,000 note made to the New York Bank; the collateral notes placed with the New York Bank were the property of the Holland Bank; $108,000 of the funds of the Holland Bank on deposit with the New York Bank were used to help liquidate the $400,000 indebtedness, and so used with at least the tacit consent of the bank commissioner in charge; the individual officers who signed the original note derived no personal benefit therefrom; and finally, the collateral notes not collected by the New York Bank were returned to the institution recognized throughout as the owner thereof and the real beneficiary of the original loan, to-wit: The Holland Bank. Under such circumstances the question arises as to whether or not the Holland Bank

would have been liable to the New York Bank as for money had and received, although the note for $400,000 made by the officers of the Holland Bank and the pledging of the notes to secure the same were *ultra vires* acts and void. There is no better authority on that question than Bank v. Lyons, supra. In that case the Supreme Court was considering the right of the lender of money to a bank to recover *in assumpsit* for money had and received, although the action of the bank's cashier in making the bank's note and in hypothecating other notes of the bank as security for the money borrowed, was void under the statute. The Supreme Court (in banc) held the bank was liable and in the course of the opinion uses this language, l. c. 570:

"If it (the bank) repudiates the note for the reason that the board of directors had not authorized its execution, then this court would sanction rank injustice to hold that payment of that money need not be made at all. Such is not the law. The bank was not exempt from the common obligation to do justice which binds individuals. Such obligations rest upon all persons whether natural or artificial. If the bank obtained the money and by mistake or without authority of law executed therefore an invalid note, then it was its duty under this general obligation to do justice, to refund it. Under those conditions an implied obligation arose on the part of the appellant to repay the money so obtained."

At page 570 the Supreme Court further states:

"We have cited and quoted somewhat extensively from a few of the many cases found in this country and in England bearing upon the question of the right of a party to sue for and recover money paid or loaned to another upon a void contract; and the rule announced by all of them seems to be that where a void contract has been entered into, and that by means thereof money or other valuable thing has been parted with by one party thereto, and received and accepted by the other party thereto, and where the latter repudiates the contract and refuses to return the money or such other valuable thing, then the law will imply an agreement on the part of the recipient to return the same to the other party; and if he fails to do so, then the injured party may maintain an appropriate action against the offending party for the recovery of the money, or for the value of the thing so retained. That implied promise or agreement springs from the general moral obligation resting upon all persons and corporations to do equity and justice in all such transactions. To hold otherwise would be sanctioning the rankest injustice, and thereby take the money or property from one party and give it to another without compensation, and against the intention of both parties, as manifested by the void contract."

That same principle of fair dealing is involved in the case at bar. No doubt the Holland Banking Company would have been liable to

the New York Bank regardless of the validity of the original note and hypothecation of other notes. Insofar as claimant's rights are concerned the equities are equally strong in its favor. If the hypothecation of claimant's note to the New York Bank was void, then, it is argued, the payment of the note by claimant to the New York Bank was voluntary and failed to discharge the indebtedness for which claimant is still liable to the Holland Bank. But the Holland Bank received the full benefit of the payment of its note by claimant. The commissioner, too, informed claimant the New York Bank owned the note thus inducing claimant to pay its note without protest, believing the New York Bank to be the holder thereof in due course. To permit the Holland Bank to stand behind the shield of the statute and to practically admit it was the sole beneficiary of the $400,000 loan and in face of the fact that by the action of its officers it recognized the loan as a bank transaction and led claimant to pay its note held by the New York Bank, which payment the Holland Bank, at least indirectly, actually received, and then repudiate the whole transaction, keeping all the fruits thereof, constitutes a form of rank injustice which would not be tolerated in individuals, and which we think our statute was never intended to permit. If the Holland Bank would now attempt to enforce its note against claimant, because the pledging thereof with the New York Bank was void, under every principle of fair dealing and equity it would be bound to return the money it received as a result of the payment made by claimant to the New York Bank. [Johnson v. Farmers & Merchants Bank, 287 S. W. 835.]

We therefore hold that defendant is now estopped from denying the right of set-off in this case; that having induced the payment of the note by a false statement of the true state of facts, although not intentional, it cannot now assert the payment was voluntary; that equity demands the parties be considered in the same position as they would have been had the New York transaction never taken place, in which position, we think, our statute heretofore referred to, does in fact place them.

Since plaintiff's deposit amounted to less than its indebtedness to the bank, we are of the opinion this judgment should be reversed and remanded with directions to enter up judgment in favor of plaintiff, the Merchants Ice & Fuel Company and against the Holland Banking Company in charge of the commissioner of finance, granting to said plaintiff a preference for the total amount of its deposit. It is so ordered. *Cox, P. J.*, and *Bradley, J.*, concur.