EDGAR C. BROWN and CLARENCE CRAIG, Trustees of Estate of ED-
WARD C. HILL, A Bankrupt, Appellants, v. STOTTS CITY BANK;
and S. L. CANTLEY, Commissioner of Finance.—38 S. W. (2d)
722.

Court en Banc, May 11, 1931.

*Ray E. Watson* and *Thos. J. Roney* for appellants.

*Charles L. Henson* for respondents.

HENWOOD, J.—The plaintiffs, as trustees of the estate of Edward C. Hill, a bankrupt, seek recovery of $27,216.80 which Edward C. Hill had on demand deposit with the defendant bank when it was closed and turned over to the Commissioner of Finance for liquidation. There is no dispute as to the amount or character of the de-

posit, but the defendants claim, and the plaintiffs deny, that the bank is entitled to certain set-offs in the total sum of $12,950. The trial court, sitting without a jury, found for the defendants on this issue, and adjudged that the plaintiffs have and recover the balance, $14,266.80, and that their claim, in that amount, be allowed and paid, *pro rata*, as a general claim against the bank. The case is here on the plaintiffs' appeal.

The bank was closed on November 30, 1928. Edward C. Hill was adjudged a bankrupt on January 29, 1929. This suit was filed on August 19, 1929, the plaintiffs' claim to Edward C. Hill's deposit with the bank having been previously filed with the Commissioner of Finance and rejected.

The set-offs in question are pleaded, in the separate answer of the Commissioner of Finance, substantially as follows:

1. A promissory note in the sum of $6,700, signed by Edward C. Hill and payable to the Stotts City Bank, or order, on December 15, 1928.

2. A promissory note in the sum of $300, signed by Edward C. Hill and payable to the Stotts City Bank, or order, on January 25, 1929.

3. A promissory note in the sum of $3,000, signed by Lulu Hill and payable to the Stotts City Bank, or order, on December 8, 1928, but, in fact, given to and held by said bank as evidence of a loan of $3,000 to Edward C. Hill, of which Edward C. Hill had the full benefit.

4. A promissory note in the sum of $2,700, signed by Lulu Hill and payable to the Stotts City Bank, or order, on January 1, 1929, but, in fact, given to and held by said bank as evidence of a loan of $2,700 to Edward C. Hill, of which Edward C. Hill had the full benefit.

5. A promissory note in the sum of $250, signed by P. J. Hill and payable to the Stotts City Bank, on demand, but, in fact, given to and held by said bank as evidence of a loan of $250 to Edward C. Hill, of which Edward C. Hill had the full benefit.

Edward C. Hill, P. J. Hill and Alvia Hill were called as witnesses on behalf of the defendants.

Edward C. Hill testified: He was engaged in farming and in raising cattle, and was president of the bank. He bought the bank, and "nobody had a thing to say around there (the bank) but Ed Hill. Whatever Ed Hill said went." Defendants' Exhibits A and B, two promissory notes for $300 and $6,700, respectively, were signed by him. Defendants' Exhibits C and D, two promissory notes for $3,000 and $2,700, respectively, were signed by Lulu Hill, his wife. Defendants' Exhibit G, a promissory note for $250 was signed by P. J. Hill, his son. All of these notes were unpaid at the time the

bank was closed. The two notes signed by Lulu Hill and the note signed by P. J. Hill were signed by them at his instance and request and for his sole use and benefit; and said notes were given to and held by the bank as evidence of loans of money by the bank to him; and all of said money was credited to his account with the bank and used by him. He obtained the two loans on his wife's notes and the loan on his son's note because, at the times these loans were negotiated, he needed money to carry on his farming and cattle business and could not borrow any more money from the bank in his own name without exceeding the limit authorized by law.

. P. J. Hill testified: He lived on his father's farm and assisted his father in the management of the farm and other business affairs. He signed the note for $250, Defendants' Exhibit G, but the money loaned by the bank on said note was credited to his father's account with the bank and his father got the use of it. On other occasions, money was borrowed from the bank on his notes for his father's use.

Alvia Hill testified: He was cashier of the bank and one of its directors. The other directors were Edward C. Hill, Lulu Hill, P. J. Hill and Emery Hill. At the time the bank was closed, it held the two notes, Defendants' Exhibits A and B, for $300 and $6,700, respectively, signed by Edward C. Hill; the two notes, Defendants' Exhibits C and D, for $3,000 and $2,700, respectively, signed by Lulu Hill, and the note, Defendants' Exhibit G for $250, signed by P. J. Hill, and all of said notes were unpaid. The two notes signed by Lulu Hill and the note signed by P. J. Hill were given to and held by the bank as evidence of loans by the bank to Edward C. Hill, and all of the money loaned on said notes was credited to the account of Edward C. Hill with the bank. When these loans were made, Edward C. Hill was indebted to the bank on his own notes in the full amount allowed by law. Lulu Hill had no account with the bank, and no collateral security was given to the bank for the payment of the two notes signed by her. He told the state bank examiner that the two notes signed by Lulu Hill were given to and held by the bank as evidence of loans of money by the bank to Edward C. Hill.

Defendants' Exhibits A, B, C, D and G were admitted in evidence in connection with the testimony of these witnesses.

No evidence was offered by the plaintiffs. .

. I. It is contended that the respective rights and liabilities of Edward C. Hill and the bank became fixed the day the bank was closed (November 30, 1928), before the debts of Edward C. Hill to the bank were due, and that, therefore, said debts are not available as set-offs in this case.

The bank was turned over to the Commissioner of Finance for liquidation, and certainly he is not limited to the collection of such

debts as were due and payable to the bank at the time the bank was closed. It is not only his right but his duty to collect all debts which have become due and payable to the bank since the bank was closed.

Section 837, Revised Statutes 1929, says:

"If any two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set off against the other, although said debts are of a different nature."

As a general rule, if the parties are mutually indebted, the defendant may set off any debt against the plaintiff which had become due at the time of the commencement of the suit. [Reppy v. Reppy, 46 Mo. 571.] As to set-offs against assignees of insolvents or trustees in bankruptcy, the rule is different. In such cases, however, any debt against the insolvent or bankrupt which had become due *at the time of the assignment or bankruptcy* may be set off against the assignee or trustee. [Smith v. Spengler, 83 Mo. 408; Huse v. Ames, 104 Mo. 91, 15 S. W. 965; Homer v. Bank, 140 Mo. 225, 41 S. W. 790; Kortjohn v. Bank, 63 Mo. App. 166; Storts v. Mills, 93 Mo. App. 201.]

True, none of the debts pleaded as set-offs were due at the time the bank was closed (November 30, 1928) except the debt evidenced by the note of P. J. Hill. But, all of said debts were due *at the time Edward C. Hill was adjudged a bankrupt* (January 29, 1929), and, assuming for the present that, under the pleadings and the proof, the debts evidenced by the notes of Lulu Hill and the note of P. J. Hill may be adjudged the debts of Edward C. Hill, said debts, as well as the debts evidenced by the notes of Edward C. Hill, should be allowed as set-offs against the claim of the plaintiffs to the money which Edward C. Hill had on deposit with the bank at the time it was closed.

II. It is further contended that neither the answer nor the proof is sufficient to support a recovery on the debts evidenced by the notes of Lulu Hill and the note of P. J. Hill as debts of Edward C. Hill.

The Commissioner of Finance does not count on the notes signed by Lulu Hill and the note signed by P. J. Hill as obligations of Edward C. Hill, but alleges, in his answer, that each of said notes was, in fact, given to and held by the bank as evidence of a loan of money to Edward C. Hill; and that all of said money was credited to the account of Edward C. Hill with the bank; and that Edward C. Hill had the full benefit of all of said money; and that Edward C. Hill is indebted to the bank in the amount of and on account of said loans of money; and asks that said debts be set off against the claim of the plaintiffs.

There can be no doubt that the allegations of the answer are sufficient to support a recovery on said debts as debts of Edward C. Hill, the cause of action pleaded as to each of said debts being an action on the common count, known as *indebtitatus assumpsit*, for money loaned by the bank to Edward C. Hill.   [5 C. J. 1380, 1381.]

As shown above, Edward C. Hill, when called as a witness by the defendants, admitted that the notes signed by Lulu Hill and the note signed by P. J. Hill were signed by them as an accommodation to him and for his sole use and benefit; and that he received, and had the full benefit of, the money loaned on said notes; and that the debts evidenced by said notes were regarded at all times, as his debts both by him and by the cashier of the bank.

In view of these admissions, it seems hardly necessary to say that the debts evidenced by said notes should be adjudged the debts of Edward C. Hill.   [Bank v. Bank, 244 Mo. 554, 149 S. W. 495; Merchants' Ice & Fuel Co v. Holland Banking Co., 223 Mo. App. 93, 8 S. W. (2d) 1030; Montgomery v. Trust Co. (Mo. App.), 10 S. W. (2d) 971.]

III.   It is finally contended that there can be no recovery on the debts evidenced by the notes of Lulu Hill and the note of P. J. Hill as debts of Edward C. Hill, because said debts, if debts of Edward C. Hill, arose out of violations of Section 5357 of the Revised Statutes of 1929.   The basis of this contention is that, at the times the loans were made on the notes of Lulu Hill and the note of P. J. Hill, Edward C. Hill was indebted to the bank in the full amount authorized by the statute above mentioned.

Counsel have cited no case, and we are aware of none, in which this statute has been construed by this court or by any of our courts of appeal.

Referring to a similar statute (Section 2758, Revised Statutes 1889), Judge BARCLAY said:   "The statute does not in terms declare void all contracts of loan to one person in excess of one-fourth of the capital stock.   It forbids a loan beyond that amount, but impliedly sanctions one to that limit.   The transaction is not intrinsically immoral; and, whatever view may be taken as to such contracts when fully executed, it is obvious that, as the excess of the loan over the prescribed limit is readily severable from the part which is within that limit, the loan is valid *at least* to the extent defined. . . . . It is not necessary in the present action to further examine into the meaning of that statute."   [McClintock v. Bank, 120 Mo. 1. c. 131, 132, 24 S. W. 1. c. 1052.]   (Italics ours.)

While the present statute (Section 5357, Revised Statutes 1929), provides that a state bank "shall not directly or indirectly lend to any individual an amount or amounts in the aggregate which will exceed" a certain per centum of the capital stock and surplus fund

of the bank, it does not say that contracts to pay excessive loans are void and unenforceable, and the language used does not indicate such a legislative intent. The purpose of this statute is to protect the interests of stockholders and creditors of banks, not the interests of borrowers from banks, and a borrower from a bank cannot escape the payment of a loan on the ground that the bank had no legal right to make the loan.

Similar statutes have been so construed by our Federal courts and by the courts of many of our sister states. [Gold-Mining Co. v. National Bank, 96 U. S. 640; Nelson & Co. v. Leiter, 190 Ill. 414; Bank v. Hildebrand, 103 Kan. 705; Bank v. Boddicker, 105 Iowa, 548; Bank v. Burchard, 33 Vt. 346; cases cited in 3 A. R. L. 59-61.] "We do not think that public policy requires or that Congress intended that an excess of loans beyond the proportion specified (in the National Banking Act) should enable the borrower to avoid the payment of the money actually received by him. This would be to injure the interests of creditors, stockholders, and all who have an interest in the safety and prosperity of the bank." [Gold-Mining Co. v. National Bank, supra, l. c. 642.] "It will be noticed that the statute (Iowa statute) does not make a loan of money in excess of the per centum named void, and the general rule applicable to loans of that character is that they are not void, the prohibition of the statute being intended as a rule for the government of the bank." [Bank v. Boddiker, supra, l. c. 558.]

It follows, from what has been said in the foregoing discussion, that the judgment of the trial court should be affirmed. It is so ordered. All concur.