SCHAEFFER, Respondent, v. RUDEN, Supt. of Banks, et al, Appellants.

(246 N. W. 105.)

(File No. 7336. Opinion filed December 30, 1932.)

*Bielski & Elliott* and *John P. McQuillen,* all of Sioux Falls, and *T. B. Thorson,* of Rapid City, for Appellants.

*George J. Danforth,* of Sioux Falls, and *A. S. Bogue,* of Parker, for Respondent.

ROBERTS, J. The facts in this case are not in controversy. The question presented for our decision is whether the conclusions of law and judgment are supported by the findings of fact. The trial court found that, prior to the closing of the defendant bank, plaintiff executed and delivered to the bank two promissory notes for the sums of $4,000 and $500; that the plaintiff had on deposit at the time of the closing of the defendant bank $2,445.37; that, prior to closing, the defendant bank without the knowledge of the plaintiff transferred the note for $4,000 to the War Finance Corporation and the note for $500 to the First National Bank of Sioux City, Iowa, as collateral security to its bills payable; that the plaintiff made demand upon the superintendent of banks and the examiner in charge of the defendant bank for a set-off of its deposit against the amount of the notes; that the plaintiff under protest paid to the War Finance Corporation $2,400, and, after rendition of judgment and under protest, the plaintiff paid to the War Finance Corporation an additional amount of $1,000 in full settlement; that plaintiff, after action was instituted and under protest, paid to the First National Bank of Sioux City, Iowa, the note of $500 and interest thereon; that after payment of its claim against the defendant bank from proceeds realized from collaterals, the First National Bank of Sioux City, Iowa, paid to the superintendent of banks a surplus of $10,000 or thereabout; that the War Finance Corporation transferred to the superintendent of banks, after settlement of its claim against the defendant bank, properties acquired in payment of collaterals, and from the sale of such properties the defendants realized $4,050; and that the plaintiff made objection when payments were demanded and at all times demanded a set-off on account of the certificates of deposit.

The learned trial judge upon these facts held that the plaintiff was entitled to recover the amount of his deposit out of the surplus which was derived from the collateral security.

Defendants concede that, if the notes of the plaintiff had been in possession of defendant bank at the date of its closing, he would

have been entitled to a set-off, but contend that, inasmuch as the notes had been delivered to the War Finance Corporation and the First National Bank of Sioux City, Iowa, before the failure of the defendant bank and inasmuch as the notes were in the sole possession and control of the two institutions and the defendant bank had no control whatsoever over the notes except the right to pay off the indebtedness and then to secure surrender of the notes, there was no mutuality of claims existing between the plaintiff and the defendant and that plaintiff was therefore not entitled to a set-off.

Plaintiff contends that the funds in the possession of the superintendent of banks were augmented by reason of his payment of the two notes; that, if the pledgees had returned the notes to the superintendent of banks unpaid, plaintiff to the extent of his deposit would have had the right to a set-off and the general creditors of the defendant bank would have had no interest therein; and that the defendant, having obtained through the acts of the pledgees funds which equitably belonged to the plaintiff, should be required to reimburse the plaintiff.

Similar facts were presented in Becker v. Seymour, 71 Minn. 394, 73 N. W. 1096, 1097. The bank, wherein the plaintiff in that case was a depositor, pledged the note of the plaintiff and other collaterals to secure a loan. The pledgee refused to recognize a right of set-off, and the amount of the note was paid under protest. The pledgee, after satisfying the amount of its loan from money realized from collaterals, returned to the receiver of the bank the surplus. The depositor secured an order for the payment of the amount of his deposit out of the proceeds returned by the pledgee, and the court in affirming this order, said:

"When the note was transferred to the pledgee as collateral security, any right of off-set then or thereafter existing was impaired, but only to the extent necessary to satisfy the debt of the pledgee; and if the latter had returned the note to the receivers unpaid, to the amount of $170.90, general creditors of the insolvent would have had no interest therein, for the respondent's right to offset his deposit would then have been perfect, and it and the note would have canceled each other. Or, in other words, all of the collateral notes (which were approximately of a value three times

as great as the debt they secured) were the property of the receivers, subject to the payment of the debt of the pledgee, and subject, further, to the equity of the respective makers thereof who had deposits with the insolvent bank to offset them against these notes, as against the receivers' interest therein; hence general creditors had no interest in the collaterals until the claim of the pledgee and such equity of the respective makers were satisfied. * * * In its last analysis, this case is simply one where the receivers have obtained, not from the assets of the insolvent, but from the respondent, through and by the act of the pledgee, $170.90, which does not equitably belong to them, or to the general creditors. If the receivers are required to repay this sum to respondent, a wrong will be righted, and no injustice done to others. Equity regards that done which ought to have been done, and in this case it will treat the unpaid balance of $170.90 due on the respondent's note as offset by his deposit of equal amount, and regard his payment of $170.90 on the note, as against the receivers, as having been made to them, through and by the act of the pledgee, under protest, and without consideration, and require them to repay the amount from the fund in their hands arising from the returned collaterals, which was increased pro tanto by such payment."

See, also, Hall v. Burrell, 22 Colo. App. 278, 124 P. 751; Merchants' Ice & Fuel Co. v. Holland Bank Co., 223 Mo. App. 93, 8 S. W. (2d) 1030; annotation, 25 A. L. R. 938.

 Appellants emphasize the rule that the right to a set-off becomes fixed when a bank closes its doors. This rule would not permit the set-off of a claim acquired after insolvency against a prior debt, but it does mean that a depositor cannot set off his deposit against a note merely because at the time of the bank's failure the note was held by another bank to which it had been pledged as collateral security, when the loan has been paid and the collateral surrendered to the superintendent of banks. 7 C. J. 652; Williams v. Burgess, 74 W. Va. 623, 82 S. E. 507, Ann. Cas. 1917C, 1185. If a pledgee collects the note of a depositor under the circumstances herein presented, it would not be just and equitable to deprive the depositor of a right of set-off if a surplus is returned to the superintendent of banks in charge of the insolvent bank. The pledgees had only a qualified interest in the securities;

they had the right to collect upon them and to apply the proceeds upon the indebtedness of the defendant bank. The general creditors had no interest in the collateral securities until the claims of the pledgees and the equities of the maker of the notes had been satisfied. It follows that, if the pledgees exacted payment in full upon notes held as collateral and more than sufficient to satisfy their claims, the surplus was subject to the equities of the maker of the notes. But it appears from the findings of the trial court that the War Finance Corporation accepted in settlement $600 less than the amount of a judgment which had been rendered for the balance due upon the note of the plaintiff pledged as collateral. The plaintiff cannot equitably be placed in a more favorable position by reason of the settlement for an amount less than was owing upon the obligation and the application of such amount upon the indebtedness owing from the defendant bank to the pledgee than if the note had actually been in the possession of the defendant bank when it closed its doors or if the note pledged as collateral had been returned upon payment of the indebtedness which it secured. The judgment is therefore modified to the extent of the aforementioned amount, together with interest computed thereon, making a total deduction of $620.06, and, as so modified, the judgment appealed from is affirmed. No costs to be taxed in this court.

CAMPBELL, P. J., and POLLEY and WARREN, JJ., concur.

RUDOLPH, J., disqualified and not sitting.