# In re Hamilton Trust Company

Williams, Brittain & Sinclair, for exceptants.

H. Eugene Heine and Max C. Baylinson, contra.

STERN, P. J., March 3, 1933.—When the secretary of banking filed his first and partial account in the matter of the Hamilton Trust Company, of which he was in possession, exceptions to the confirmation thereof were filed on behalf of twenty-five claimants whose claims arose out of the following circumstances:

Each of the claimants had a deposit account with the Hamilton Trust Company (hereinafter called the "trust company") at the time of the closing of its doors. Each of them had borrowed money from the trust company prior to its closing, and had given to it, as evidence of their loans, their respective promissory notes. These notes were hypothecated by the trust company with the Philadelphia National Bank (hereinafter called the "bank") as part of the collateral security assigned by the trust company to the bank for a large loan or series of loans which the trust company had made from the bank.

Upon the closing of the trust company the bank made demand upon these claimants, as well as upon many other obligors of notes which formed part of the collateral, and thereupon each of these present claimants paid to the bank in full the amount due on their respective notes. Some weeks after the trust company closed and after these claimants had thus paid their notes in full to the bank, the Department of Banking effected an arrangement with the bank whereby the bank agreed to collect, and did collect, on account of similar notes originally made payable to the trust company, only the excess of the amount of said notes over and above the amount of the deposits of the obligors at the trust company at the time of its closing. After the date upon which this arrangement was effected, all depositors who were also debtors to the trust company, and whose notes were with the bank as aforesaid, paid to the bank only such excess, and thereupon the bank returned and delivered to the trust company the notes of such persons. As to such persons, therefore, their notes remained obligations in favor of the trust company for an amount in each instance equal to the deposit balance of the obligor on the note, with the result that the offset of the deposit balance immediately canceled in full the remaining obligation to the trust company upon the note.

It thus appears that those depositors who paid on their notes after this arrangement was effected between the banking department and the bank

obtained the full benefit of their rights of set-off, whereas the present claimants, who had responded immediately to the demand of the bank for the payment of their notes, would be penalized if by so doing they lost their rights of set-off and, having paid their notes in full, could recover only a percentage or dividend on their deposit balances. The claimants contend that such a situation would be inequitable, and they ask that the court direct the secretary of banking to return to them out of the proceeds of the collaterals returned by the bank the payments made on their notes up to the amount of their respective deposit balances at the time of the closing of the trust company, thus obtaining for them the equivalent of their rights of set-off.

The collateral held by the bank was greatly in excess of the amount of the trust company's loans secured by it, and, after the bank's loan had been fully repaid out of it, the balance of the collateral returned to the banking commissioner in possession of the trust company was far in excess of the total amount of the present claims, and such excess has already been realized in liquidation.

While there are no cases deciding this question in our own state, there are decisions in other jurisdictions, notably Becker v. Seymour, 71 Minn. 394 (1898); Hall v. Burrell, 22 Colo. App. 278 (1912); Merchants' Ice and Fuel Co. v. Holland Banking Co., 223 Mo. App. 93, 8 S. W. (2d) 1030 (1928). All these cases sustain the contention of the claimants. There is a single case contra, namely, Balbach v. Frelinghuysen, 15 Fed. 675, which was an early case (1883) in the Circuit Court for the District of New Jersey. In our opinion, Pennsylvania should follow the prevailing view rather than the New Jersey decision, which contains no statement of the reasoning upon which it is based. On the other hand, the opinion in Becker v. Seymour, supra, justifies the conclusions there reached. It adopts the view that when the notes were transferred to the pledgee as collateral security the rights of set-off were thereby impaired, but only to the extent necessary to satisfy the debt of the pledgee; that the notes were the property of the insolvent institution subject to the payment of the pledgee's debt and subject, further, to the equity of the respective makers thereof who had deposits with the insolvent company to offset them against the notes; and that, therefore, general creditors had no interest in the collaterals until the claim of the pledgee and such equity of the respective makers were satisfied. The opinion further points out that persons in the position of the present claimants might have maintained an action against the pledgee to compel it to exhaust other collaterals first and thus preserve their rights of set-off; furthermore, that the result of the claimants paying their notes in full instead of merely the excess over the amounts of their deposits was to increase the fund in the hands of the receiver arising from the returned collaterals by a sum to which neither the receiver nor the general creditors have any equitable claim. The court said that accordingly, in its last analysis, the case was simply one where the receiver had obtained, not from the assets of the insolvent company but from the claimants, through and by the act of the pledgee, a sum of money which did not equitably belong to the other creditors, and that if the receiver were required to repay this sum to the claimants a wrong would be righted and no injustice done to others. Accordingly, the court directed the receiver to repay from the funds in his hands arising from the returned collaterals the amount by which that fund had been increased by reason of the payment of the note in full instead of the excess of the amount of the note over the deposit balance of the maker.

In Merchants' Ice and Fuel Co. v. Holland Banking Co., supra, the court pointed out that "equality is equity," and that when assets are to be distributed those having equal rights should share equally; therefore, a claimant should

not suffer because he paid to the pledgee the full amount of the obligation on his note as against others in the same position who paid to the pledgee only the excess of the amount of their notes over the amount of their deposit balances and used the latter as a set-off to cancel their obligation on the remainder of the indebtedness on their notes.

It is in accordance with these decisions, which this court approves, that we have entered a decree, directing the secretary of banking, in possession of the Hamilton Trust Company, to pay to each of the claimants, out of the proceeds of the sale of the collateral securities returned to him by the Philadelphia National Bank consequent upon the liquidation of the Hamilton Trust Company's indebtedness to the bank, the amounts representing their respective deposit balances at the time of the closing of the Hamilton Trust Company.