**MEEKER v. HALSEY et al.**
**No. 115.**

Circuit Court of Appeals, Second Circuit.
Jan. 11, 1937.

300

Lynch, Cahn & Weed, of White Plains, N. Y. (Monroe J. Cahn and Harold M. Miller, both of White Plains, N. Y., of counsel), for appellant.

Meighan & Necarsulmer, of New York City (Burton C. Meighan, Jr., of New York City, and Louis A. Marchisio, of Larchmont, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the defendants in an action against them, as executors of the endorser of a promissory note, brought by the receiver of a national bank. The defendants admitted the execution of the note, but pleaded their privilege to set off a bank deposit of the maker, the Mamaroneck Individual Laundry Inc. The facts are not in dispute. The laundry had had a deposit account in a predecessor of the plaintiff's bank, "The First National Bank and Trust Company of Mamaroneck"—the "Old Bank"—to which it had given a demand note, dated October 31, 1930, endorsed by the defendants' testator. The plaintiff's bank, "The First National Bank in Mamaroneck"—the "New Bank,"—took over the "Old Bank's" business fourteen months later, on January 15, 1932, by assuming its debts and moving into its quarters. In consideration of that undertaking the "Old Bank" gave it a note in the amount of all the "Old Bank's" debts, and as security assigned to it its assets, among them the note in suit; the agreement between the banks providing that when any pledged note became due, the pledgee—the "New Bank"—might renew it in its own name without change in the interests of the pledgor or pledgee. After the assignment the laundry company continued its account, now with the "New Bank," which "held itself out" to both maker and endorser "as sole owner" of the note and of a renewal to be mentioned in a moment; both therefore knew that they were dealing with another bank. On October 27, 1932, the laundry took up the demand note by giving a renewal, payable January 27, 1933, in which the "New Bank" was payee, and which the defendants' testator again endorsed. The defendants paid by far the greater part of this renewal and the case turns upon whether they may set off against the unpaid balance the laundry's deposit account in the "New Bank" at the time when it closed its doors. It does not appear how much, if any, of that account was made up of deposits carried over from the "Old Bank"; nor does it appear whether the pledged assets of the "Old Bank" were more than enough to meet its note to the "New Bank." The judge, to whom the case was tried without a jury, gave judgment for the defendants, because the "New Bank," by holding itself out to both maker and endorser as the owner of both notes, and crediting payments of interest upon them by charging the account of the laundry, had "estopped" itself to deny that it was in fact the owner and must therefore concede the set-off.

We can see no ground for an estoppel, which must rest upon some reliance by the maker or the endorser upon the putative representations of the "New Bank." The laundry might indeed have kept its deposit in that bank because the note was in effect a security for it, but there is no evidence that it did so, and the defendants had to prove it. Estoppel being eliminated, the findings do not enable us finally to dispose of the case. Whether the laundry's account was in whole or in part made up of deposits carried over from the "Old Bank," or by fresh deposits in the "New Bank," can be determined by allocating first withdrawals against first deposits, according to the usual doctrine. Clayton's Case, 1 Mer. 606; United States v. Kirkpatrick, 9 Wheat. 720, 737, 6 L.Ed. 199. Cf. First National Bank v. National Surety Co., 130 F. 401, 66 L.R.A. 777 (C.C.A. 6). So far as it shall then appear that the balance represented a debt of the "Old Bank," the set-off was good. The "New Bank's" assumption of the old debts did not release the "Old Bank," whose depositors kept their privilege of using their

deposits as a set-off against any overdue notes pledged to the "New Bank." Section 267(2) of the N.Y. Civil Practice Act. The demand note had been held for more than a year before the "Old Bank" pledged it—an unreasonable time—and the "New Bank" was not a holder in due course. Negotiable Instruments Act (Consol.Laws N.Y. c. 38) § 92. Herrick v. Woolverton, 41 N.Y. 581, 1 Am.Rep. 461. On the other hand, so far as the laundry's account may turn out to be made up in whole or in part of deposits in the "New Bank" after it began business, the privilege to set it off will depend upon whether that bank is entitled to the entire proceeds of the note; that is to say, whether the note in suit was necessary to pay the "Old Bank's" note. If it was, the "Old Bank" had no equity in it, and the claims were mutual in interest. Bailey v. Finch, L.R. 7 Q.B. 34; Becker v. Seymour, 71 Minn. 394, 73 N.W. 1096; Schaeffer v. Ruden, 61 S.D. 64, 246 N.W. 105; Aab v. French (Mo.App.) 279 S.W. 435. Cf. Wheeler v. Newbould, 16 N.Y. 392, 398. If the "Old Bank" had an equity, the question might still theoretically arise whether the "New Bank"—the pledgee—might not elect to marshal the proceeds of the note in suit against the note of the "Old Bank"; but, since it is contesting the set-off, we are to assume that it will not do so, but allocate them against the equity so far as it can. Hence so far as the laundry's account turns out to have been made up of deposits in the "New Bank," its privilege of set-off will depend upon whether the pledged assets were too small to pay the "Old Bank's" note. It follows that the set-off should be allowed except in so far as the deposit was a debt only of the "New Bank," and then only in case the pledged assets were not enough to pay the "Old Bank's" note. These facts can be ascertained upon a new trial.

We have throughout assumed that the defendants have the same privilege as the laundry of pleading the set-off. The general rule as between principal and surety is otherwise; for the principal may prefer to reserve his claim against the creditor for prosecution on another occasion. Gillespie v. Torrance, 25 N.Y. 306, 82 Am.Dec. 355; Elliott v. Brady, 192 N.Y. 221, 85 N.E. 69, 18 L.R.A.(N.S.) 600, 127 Am.St.Rep. 898; Ettlinger v. National Surety Co., 221 N.Y. 467, 117 N.E. 945, 3 A.L.R. 865; United States v. Morley Construction Co. (D.C.) 11 F.Supp. 841. If however the principal has shown that he means to set off the claim, no injustice is done the creditor if the surety does the same. Balsley v. Hoffman, 13 Pa. 603, 611; Winston v. Metcalf, 7 Ala. 837; National Surety Co. v. Breece Lumber Co., 60 F.(2d) 847, 851 (C.C.A.10) (semble). It would seem that this should be a fortiori true when as here the creditor is insolvent, and he and the principal have but one claim against each other. Set-off is then the only way by which the principal can secure full payment, which it is safe to assume he will exact. There is however no decision on the point, though there are several dicta. Fidelity & Deposit Co. v. Duke, 293 F. 661, 665 (C.C.A.9); National Surety Co. v. Breece Lumber Co., supra; Coffin v. McLean, 80 N.Y. 560, 564; Smith's Adm'rs v. Wainwright's Adm'rs, 24 Vt. 97, 106.

The plaintiff makes a final point based upon a tender made by the laundry and kept good, sufficient to pay the unpaid balance of the note if combined with the deposit. His theory is that although this may be a good payment, qua the maker—the laundry—it is not good, qua the endorser—the defendants. For this he relies upon Madison Square Bank v. Pierce, 137 N.Y. 444, 33 N.E. 557, 20 L.R.A. 335, 33 Am.St.Rep. 751, where it was held that the creditor may collect the debt from the principal though the surety has already paid it; a doctrine which must stand on the theory that the creditor may constitute himself a trustee of the proceeds for the surety. It would be a perversion of such a doctrine to allow the creditor to collect from the surety after the principal had paid; he could neither recover the same debt twice for himself, nor make himself a trustee for the principal of proceeds collected from the surety.

We need not upset the findings of the judge in order to reverse the judgment, as the defendants seem to suppose. They rely upon an estoppel in support of which the judge made no adequate finding of fact; and while, even though he did not, we might look to the evidence for a substitute, it does not exist. Furthermore, the findings do not answer the other question on which the case turns; nor does the evidence.

Judgment reversed; new trial ordered.