Northwestern Trust Company's Case (No. 1).

Argued May 10, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

(1)

2

*George J. Mallen,* Special Deputy Attorney General, with him *Russell C. Wismer,* for appellants.

*John W. Lord, Jr.,* Special Deputy Attorney General, with him *James W. McLea,* for appellee.

*Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Commonwealth, Amicus Curiæ.

OPINION BY MR. JUSTICE STERN, June 24, 1940:

On July 17, 1931, the Secretary of Banking took possession of the Northwestern Trust Company. In April, 1933, he took possession of the Christian A. Fisher Building and Loan Association, the Fred Schmidheiser Building and Loan Association and the Successful Building Association. When the Trust Company closed its doors the Christian A. Fisher Building and Loan Association had on deposit with it a balance of $51,921.09, but owed it $14,000 on loans represented by the Association's demand note; the Fred Schmidheiser Building and Loan Association had on deposit with it a balance of $86,407.87, but owed it $68,000 on loans for which it held the Association's demand note; the Successful Building Association had on deposit with it a balance of $53,122.53, but owed it $49,000 on loans represented by two demand notes of the Association. Prior to July

17, 1931, the Northwestern Trust Company had pledged these notes, together with other notes and securities, as collateral for the payment of various loans made to it by the Philadelphia National Bank, to which, when the Trust Company closed its doors, it was indebted in the sum of $1,075,392.54. After the Secretary of Banking took possession of the Trust Company, the Associations made payments at various times to the Philadelphia National Bank on account of their respective notes, the indebtedness of the Christian A. Fisher Building and Loan Association being thereby reduced to $10,500, that of the Fred Schmidheiser Building and Loan Association to $25,186.42, and that of the Successful Building Association to $20,536.19.

Through the application by the Philadelphia National Bank of the balance which the Trust Company had on deposit with it and the proceeds realized from the sale of the securities and from the collections on account of the notes assigned to it as collateral, the debt of the Trust Company to the Bank was ultimately liquidated, and on January 17, 1939, the Bank returned to the receiver of the Trust Company the surplus collateral which then remained, included therein being the notes of the three Associations.

At the audit of the third and partial account of the receiver of the Trust Company, the court held that he could set off the liability of the Associations on their notes against their respective deposits, but that the Associations were entitled to preferred claims to reimbursement, out of the proceeds of the collateral returned by the Philadelphia National Bank to the Trust Company, of the sums which they had paid to the Bank on account of the notes, the total credits to the Associations not to exceed the amounts of their respective deposit balances. From that decree the receiver of each of the Associations and the receiver of the Trust Company now appeal, the former because the Trust Company was permitted to set off the amounts of the notes against the

deposits, the latter because the Associations were allowed to recoup themselves out of the returned collateral for the payments which they had made to the Bank.

At any time prior to its closing, the Trust Company could have sold the notes, and in that event, of course, no set-off would have been available to it, since it could not set off a claim of which it was not then the owner: *U. S. Bank & Trust Co. Case,* 311 Pa. 320; *Franklin Trust Company Cases,* 136 Pa. Superior Ct. 111. But, by merely pledging the notes, it retained title thereto to the extent, at least, of an equity of redemption, and remained a creditor of the Associations on the notes, giving to the pledgee only a qualified interest therein which came to an end when its indebtedness was paid and the notes were returned to it. Pending the duration of the pledge relationship, the rights of the Trust Company and the Associations to mutual set-offs were not destroyed, but merely held in abeyance. The other creditors of the Trust Company had no lawful interest in the notes until both the claim of the Bank and the equitable rights of the Building and Loan Associations, if they should desire to exercise them, to set off their deposits against their liability on the notes, were satisfied. When the notes were returned by the Bank, the set-off rights of the Associations and the Trust Company were automatically revived with the same effect as if the notes had never been pledged.

The result of the payments made by the Building and Loan Associations on account of their notes was to augment the funds in the hands of the receiver of the Trust Company arising from the return of the collateral by a sum to which the other creditors of the Trust Company had no equitable claim, since, if such payments had not been made, more of the other collateral would have had to be appropriated by the pledgee in order to liquidate the Trust Company's indebtedness to it. Equitably, therefore, while the Trust Company, because of its ownership of the notes at the time it went into receivership

(subject only to the pledgee's temporary interest therein) should have the right to set them off against the claims of the Building and Loan Associations for their deposits, the Associations, which could have set off their deposits had they made no payments thereon, should not have that right diminished by reason of their having been obliged to make payments on the notes in the hands of the pledgee, and should therefore be granted reimbursement in order to put them on a parity with other depositors who, similarly placed, may not have made any such payments on account of notes owed by them to the Trust Company. Of course, as the court below properly held, the total credits allowed to the Building and Loan Associations should not be allowed to exceed the amounts of their respective deposit balances.

The views here expressed are in accord with the conclusions reached by courts in other jurisdictions: *Becker v. Seymour,* 71 Minn. 394, 73 N. W. 1096; *Hall v. Burrell,* 22 Colo. App. 278, 124 P. 751; *Merchants' Ice & Fuel Co. v. Holland Banking Co.,* 223 Mo. App. 93, 8 S. W. (2d) 1030; *Schaeffer v. Ruden,* 61 S. D. 64, 246 N. W. 105; *Powell v. Hood,* 211 N. C. 137, 189 S. E. 483.

The decree of the court below is affirmed, the costs to be equally apportioned among the receiverships of the Trust Company and each of the Building and Loan Associations.