GEORGE J. BASSETT, BANK COMMISSIONER *v.* THE MECHANICS BANK OF NEW HAVEN.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 3—decided December 5, 1945.

*William F. Healey,* for the applicant, the Sponge Rubber Products Company.

*A. Frederick Mignone,* with whom, on the brief, was *Vincent P. Dooley,* for the City of New Haven.

*Robert M. Dowling,* assistant attorney general, with whom was *William L. Hadden,* attorney general, for the bank commissioner, successor receiver of the defendant.

MALTBIE, C. J. The defendant bank is in receivership and the controversy before us arises out of the application of the Sponge Rubber Products Company, hereinafter called the plaintiff, a depositor, asking that it be paid from the proceeds of certain property in the hands of the receiver the difference between the amount of its deposit when the receivership began and the dividends it has received. On May 28, 1932, the plaintiff was indebted to the commercial department of the bank to the amount of $29,000, represented by five negotiable notes, all unsecured and none then due. On that day the bank borrowed a large sum from the Reconstruction Finance Corporation and pledged certain of its assets, including these notes, to secure the loan. The finance corporation, under the terms of the note representing the loan, had the right to collect any sums due on the collateral it received, or otherwise to convert it into money. The bank was closed by order of the bank commissioner and placed in receivership on June 8, 1932, and has been in receivership ever since. On that day the plaintiff had $8113.40 on deposit in

its commercial department. As the loan by the finance corporation was not paid, it proceeded to realize upon the collateral it held. Before June 12, 1940, the plaintiff, under protest, paid to the corporation the full amount due on the notes, with a considerable sum in addition as interest. On November 1, 1944, the indebtedness of the bank to the finance corporation had been satisfied, and it turned back to the receiver a considerable amount of the collateral it held. The plaintiff has received $3245.36 in dividends upon its deposit. The plaintiff's claim is that the difference between the amount of its deposit in the bank when it went into receivership and the amount the plaintiff has received in dividends should be paid to it by the receiver out of the proceeds of the collateral returned to him by the corporation. There are several others who were depositors in the commercial department of the bank who are in the same situation as the plaintiff and who could advance a like claim.

As the plaintiff's deposit was in, and its debt was owing to, the commercial department of the bank, had the notes given by the plaintiff passed into the hands of the receiver, it would have been entitled to have its deposit set off against them and its debt thereby reduced. *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 194, 90 Atl. 369; *Searle* v. *Crampton*, 118 Conn. 42, 44, 170 Atl. 480.

There is a sharp difference in judicial opinion upon the question whether, having paid the amount due on the notes to the pledgee, the plaintiff should be granted the relief it asks. A number of cases bearing upon this question are gathered in a note in 139 A. L. R. 723, and counsel have cited a few additional authorities. The decision in *Becker* v. *Seymour*, 71 Minn. 394, 73 N. W. 1096, where the court, under similar facts, upheld the claim of the depositor, assumed that there was some

equitable right on his part to have the other collateral in the hands of the pledgee applied to the loan before it sought to avail itself of his note; this decision was followed in *Hall* v. *Burrell,* 22 Colo. App. 278, 282, 124 Pac. 751; *Merchants' Ice & Fuel Co.* v. *Holland Baking Co.,* 223 Mo. App. 93, 97, 8 S. W. (2d) 1030; *Schaefer* v. *Ruden,* 61 S. D. 64, 246 N. W. 105; but, if there was any such equity present in those cases, there certainly was none in this case. The only other authorities cited to us which directly support the plaintiff's claim are *Northwestern Trust Co.'s Case,* 339 Pa. 1, 4, 14 Atl. (2d) 96, and *Ex parte Mechanics F. S. & L. Assn.,* 199 S. C. 23, 18 S. E. (2d) 592, 139 A. L. R. 714, in the latter of which the chief justice filed a vigorous dissent. These decisions seem to rest upon two grounds: One is that, in this way, parity among creditors might be brought about; and the other, that, as the money collected from the plaintiff materially assisted in paying the bank's debt to the finance corporation, and this in turn had the effect of bringing back into the hands of the receiver the excess of the collateral above the loan, the plaintiff, deprived of its right to set off its deposit against its debt to the bank, should in equity be entitled to receive from the property returned the amount it might have set off or so much of it as could be paid from those assets.

Neither of these grounds will stand analysis. No doubt, any depositor whose note, pledged to the finance corporation, was returned to the bank might set off against his indebtedness on it the amount of any deposit he had in the commercial department of the bank. *Williams* v. *Burgess,* 74 W. Va. 623, 627, 82 S. E. 507; *Ellerbe* v. *Studebaker Corporation of America,* 21 Fed. (2d) 993, 997. As between a depositor in the commercial department whose note to the bank had been pledged to the finance corporation, or such a de-

positor whose note had not been so pledged, and the plaintiff, the allowance of the latter's claim might or might not produce parity, according as the amount of collateral returned and applicable to the notes of the plaintiff, together with any dividends it had received, did or did not equal the amount of its deposit. As between a depositor who was not indebted to the bank and the plaintiff, the result of the allowance of the claim would mean that the plaintiff would get back a larger, and it might be a much larger, proportion of its deposit from the assets of the bank. But the most glaring inequality would be between the depositor who had given a note to the bank which it had sold just prior to the receivership and one in the plaintiff's position; for the former's right to any return upon his deposit other than such dividends as he might receive would be completely gone. In fact, it is a consideration of the case of such a depositor which discloses the fallacy in the reasoning of those decisions supporting the plaintiff's claim. It might well be that, by the sale, on the eve of the receivership, of a note which a depositor had given the bank, its assets were materially increased, yet certainly he could not claim, on that account, any preference against its general assets or against the proceeds of the sale.

While the notes were held by the finance corporation, no doubt the bank had, and its receiver continued to have, a general property in them. *Reiley* v. *Healey,* 122 Conn. 64, 71, 187 Atl. 661. But had the corporation sold them, as it might have done under the agreement with the bank, that property would have been gone just as completely and with the same effect upon the rights of the parties as though the bank had sold the notes outright in the first instance; and certainly, that the finance corporation collected upon them instead of selling them cannot change the plaintiff's

rights. When the plaintiff gave the bank negotiable notes for its indebtedness, it voluntarily placed itself in a position where the bank might sell or pledge the notes; and if the result of the bank's dealings with them is to deprive the plaintiff of a right of set-off which it might otherwise have had, this does not create any equity in its favor. As illustrative of this proposition, we call attention to one of the questions before us in *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 8, 160 Atl. 60. In a bank which had both a commercial and a savings department, certain notes in the former were transferred to the latter in return for assets of similar value, and we held that the indebtedness represented by the notes could not be set off against a deposit in either department. We agree with the decisions denying such a claim as that made by the plaintiff. *Balbach* v. *Frelinghuysen*, 15 Fed. 675, 686; *Leach* v. *City-Commercial Savings Bank*, 207 Iowa 1254, 1268, 219 N. W. 496; see also *In re Liquidation of Canal Bank & Trust Co.*, 182 La. 421, 430, 162 So. 31.

To the first question propounded, asking, in effect, whether the plaintiff is entitled to receive from the collateral returned to the receiver by the Reconstruction Finance Corporation an amount equal to the unpaid portion of its deposit in the commercial department of the bank, we answer "No." In view of this conclusion, the other questions propounded require no answer.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.