Franklin Trust Company Cases.

112

Argued December 12, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Albert Loeb Katz,* for appellant, No. 451.

*David B. James, Jr.,* for appellant, No. 453.

*Alexander S. Lipschutz,* with him *Guy K. Bard,* Attorney General, *Horace M. Barba,* Special Deputy Attorney General, and *Bernard J. Kelley,* for appellee.

OPINION BY CUNNINGHAM, J., June 26, 1939:

The appellant in each appeal was a depositor in the Franklin Trust Company, which closed its doors on October 5, 1931, and was taken over by the Secretary of Banking. Both filed exceptions to the Secretary's account, claiming their deposits entitled them to a preference upon distribution, for the reasons hereinafter stated. The court below dismissed their exceptions and these appeals followed. As the questions involved are identical, one opinion will suffice.

Robert H. Dunnington, appellant at No. 453, was not only a depositor with the Franklin Trust Company but had borrowed money from it. These loans were evidenced by two notes dated November 1, 1928, and August 25, 1930. On September 24, 1931, the Franklin Trust Company sold both notes to The Pennsylvania Company, another Philadelphia banking institution, for the sum of $66,000, the amount to which they had been reduced by that date. Appellant had no knowledge of the sale. After the failure of the Franklin Trust Company, The Pennsylvania Company demanded payment from appellant and the obligations were paid in full on November 5, 1931.

Elizabeth Lee Van Schusler, appellant at No. 451,

had borrowed $1,800 from the Franklin Trust Company and had given her note therefor dated August 17, 1931, and payable November 12, 1931. This note was also sold by the Franklin Trust Company to The Pennsylvania Company prior to the closing of the former institution. On October 3, 1931, Franklin Trust Company demanded and received $200 in reduction of the note, which it paid over to The Pennsylvania Company. She also received no notice of the sale. As was the case with the Dunnington notes, The Pennsylvania Company demanded payment of her note after the closing of the Franklin Trust Company, and the balance remaining due thereon was paid with interest on November 16, 1931.

In addition to the transactions involving the notes of these appellants, the Franklin Trust Company itself had borrowed from The Pennsylvania Company at various times between August 13 and October 5, 1931, sums aggregating $1,250,000, upon which loans the trust company had pledged, as collateral, securities which it owned. Subsequent to October 5, 1931, The Pennsylvania Company sold this collateral and returned to the Secretary of Banking the sum of $69,898.19, representing the balance remaining after payment of the loans and certain minor adjustments.

Appellants claim they are entitled to a preferential status as respects this balance of $69,898.19. Briefly stated, their contention is that a depositor has a right of set-off for the amount of his deposit against his obligation to the bank of deposit; that the sale of the notes was not a real sale in fact; that The Pennsylvania Company, if it had so chosen, might have reimbursed itself to the amount of their notes out of the proceeds of the sale of the above mentioned collateral owned and pledged to it by the Franklin Trust Company; and that by the payment of their notes in full, appellants had, in effect, increased the fund returned to the Secretary

of Banking by sums in which they were entitled to an equity to the extent of their deposits.

In support of this contention, appellants rely upon *In re Hamilton Trust Company,* 17 D. & C. 633, a decision handed down by Mr. Justice STERN while in the common pleas. In that case each of the claimants had a deposit account with the Hamilton Trust Company, and each had previously borrowed money from it upon their notes, which notes were in turn hypothecated by the trust company with the Philadelphia National Bank as part of the collateral security given by the trust company to the bank for a large loan obtained by it from the bank. Upon the closing of the trust company, the bank made demand upon the claimants and each of them paid their notes in full. Shortly thereafter, the Secretary of Banking arranged with the bank that the latter should collect from the makers of other notes, which had been turned over as part of the same collateral, only so much as represented the difference between the amount of those notes and the amount of the deposits which the makers of the notes had in the trust company at the time it closed. The net effect of this arrangement was that the depositors, who had not paid their notes up to that time, received a set-off for the full amount of their deposits, whereas the claimants, who had previously made payment in full, received only the ordinary depositor's dividend. The court held that the claimants were entitled to receive, out of the proceeds of the excess collateral returned by the bank to the Secretary of Banking, sums equal to their respective deposit balances.

The primary difficulty with the contention of appellants that the case cited rules the one now at bar is that the notes there involved were merely *pledged* by the trust company as collateral for a loan, whereas the notes now under consideration were unqualifiedly sold to The Pennsylvania Company, with the result that the Franklin Trust Company had no title to them at the

time it closed its doors. Appellants assert that the transaction was not that of an ordinary sale, but the facts do not bear them out. No testimony was taken on the exceptions. The record consists of what is, in substance, an agreed upon statement of facts stipulated of record by the respective counsel for the parties in interest. As to these transactions, counsel for the Secretary of Banking made the following statement:

"......The Pennsylvania Company from time to time purchased from the Franklin Trust Company the notes of certain customers of the Franklin Trust Company and the collateral accompanying the same. These notes were purchased by The Pennsylvania Company from the Franklin Trust Company at face value.

"Among the notes and the collateral accompanying the same which were purchased by The Pennsylvania Company from the Franklin Trust Company was the note of Elizabeth Lee Van Schusler, dated August 17, 1931, in the amount of $1,800, and the collateral accompanying the same.

"The Pennsylvania Company also purchased from the Franklin Trust Company on or about September 24, 1931 two notes of Robert H. Dunnington, dated November 1, 1928, in the amount [before reduction] of $82,-977.13, and the collateral accompanying the same, and his note dated August 25, 1930, in the amount [before reduction] of $14,000 and the collateral accompanying the same."

Thereafter, counsel for The Pennsylvania Company stated as follows:

"It is agreed that if Mr. Newhall, the 2d Vice-President of The Pennsylvania Company were called to testify he would testify as follows; pertaining to the notes and collateral accompanying the same which were purchased by The Pennsylvania Company from the Franklin Trust Company:

" 'The notes were actually and legally purchased by The Pennsylvania Company. It was my understanding

that if at any time the Franklin Trust Company desired to buy back the notes they would of course be resold immediately to the Franklin Trust Company without question at the purchase price.

" 'At the time the sales were made it was the hope of everybody that the Franklin Trust Company would be able to continue in business and eventually buy back the notes.

" 'There appears to have been no definite statement made at the time the sales were made concerning the subject, and of course no commitment by the Franklin Trust Company to buy them back ......'

"Subject to objection of counsel for the Secretary of Banking, it is agreed that after the purchase, in order to prevent embarrassment of the Franklin Trust Company, the Franklin Trust Company acted as the agent of The Pennsylvania Company in all cases where demands for payment were made, or demands for additional collateral; and if any interest was collected it was collected by the Franklin Trust Company as agent for The Pennsylvania Company."

The stipulations supply the only evidence in the record relative to the nature of the transaction between the trust company and The Pennsylvania Company. They were adopted by counsel without objection, and no effort was made to contradict them by any evidence either oral or documentary. So far as they disclose, the situation is simply that of a sale of notes for value to a third party. We do not even here have a case where, as appellants contend, there was an agreement by the trust company to repurchase the notes. While the record does contain a statement that The Pennsylvania Company would have resold the notes to the trust company, had the latter so desired, it contains a direct denial that there was any obligation resting on the latter company to buy them back.

The reasons underlying the Hamilton Trust Company decision are clearly stated in the following summary

by Mr. Justice STERN of the opinion in one of the cases on which he relied:

"It adopts the view that when the notes were transferred to the pledgee as collateral security the rights of set-off were thereby impaired, but only to the extent necessary to satisfy the debt of the pledgee; that the notes were the property of the insolvent institution subject to the payment of the pledgee's debt and subject, further, to the equity of the respective makers thereof who had deposits with the insolvent company to offset them against the notes; and that, therefore, general creditors had no interest in the collaterals until the claim of the pledgee and such equity of the respective makers were satisfied. The opinion further points out that persons in the position of the present claimants might have maintained an action against the pledgee to compel it to exhaust other collaterals first and thus preserve their rights of set-off; furthermore, that the result of the claimants paying their notes in full instead of merely the excess over the amounts of their deposits was to increase the fund in the hands of the receiver arising from the returned collaterals by a sum to which neither the receiver nor the general creditors have any equitable claim. The court said that accordingly, in its last analysis, the case was simply one where the receiver had obtained, not from the assets of the insolvent company but from the claimants, through and by the act of the pledgee, a sum of money which did not equitably belong to the other creditors, and that if the receiver were required to repay this sum to the claimants a wrong would be righted and no injustice done to others."

In other words, where the note of a depositor is merely pledged to another institution, the bank of deposit, when it closes, still has title to the obligation; and since it may assert its rights in that obligation against the depositor, the depositor in turn has a corresponding right of set-off against the bank. While, of

course, the right of set-off is impaired to the extent necessary to satisfy the debt of the pledgee, the obligor on the note has an equitable right to compel such a disposition of the assets of the insolvent bank in the hands of a transferee as will not impair his right to set-off any further than is necessary to protect the transferee, and particularly so, where any other course would be to prefer one depositor over another as respects a single fund. In the instant case, however, the Franklin Trust Company had parted with all title to the notes, and since it had no right of action against appellants, by the same token they themselves had lost their right of set-off as respects the obligation.

It is true that, in a certain sense, appellants have suffered a misfortune, in that it so happened that their notes were sold by the trust company and were not its property at the time it closed its doors. However, the notes were negotiable and the trust company had a right to sell or discount them, if it so desired. The fact that these particular notes were sold before the bank failed was simply a business risk which appellants ran when they gave the obligations.

Nor are we impressed by appellants' further argument that The Pennsylvania Company, instead of demanding and receiving payment from appellants, might have reimbursed itself from the surplus fund which arose from the sale of the Franklin Trust Company collateral. There was, so far as the record shows, no primary obligation on the trust company to pay the amount of the notes. It was the duty of The Pennsylvania Company, in the first instance, to proceed against the appellants as makers. Any secondary liability of the Franklin Trust Company as endorser of the notes, or otherwise, would have arisen only if appellants had refused payment, and such was not the case. But even if we assume that there was a potential liability of the trust company to The Pennsylvania Company, and that the latter might have had the right to recoup itself

out of the balance remaining from the sale of the collateral deposited by the trust company, this establishes no special equity in favor of appellants. So far as the record shows, the collateral in question was pledged for loans made to the Franklin Trust Company. These transactions were quite distinct and apart from the sales of appellants' notes. There was not, as there was in the Hamilton Trust Company case, a single transaction or a series of connected transactions. Furthermore, the collateral deposited by the trust company consisted of securities owned by it and not of notes of other depositors. Therefore, we do not have presented, as was presented in the Hamilton Trust Company case, a situation where one depositor, in effect, received a preference over another.

The only other fact requiring consideration is that, in the case of the Van Schusler note, the Franklin Trust Company demanded additional collateral and a reduction of the loan after the note had been transferred to The Pennsylvania Company. The argument is made that these acts were inconsistent with a sale. It is useless, however, to speculate about the inferences which should be drawn from these acts; they have been fully explained upon the record. As will be seen from the above quoted statement of counsel for The Pennsylvania Company, it was agreed that the Franklin Trust Company, after the purchase, "acted as the agent of The Pennsylvania Company in all cases where demands for payment were made, or demands for additional collateral," and that this was done "in order to prevent embarrassment of the Franklin Trust Company." Since the parties themselves accepted this explanation, their present argument is not entitled to any weight.

We have not discussed in detail other cases cited by appellants. There can be no quarrel about the general rules they lay down with reference to equitable set-offs, but none of them presents such a factual situation as

would afford a precedent for the allowance of a preference in the present case.

The order of the court below in each appeal is affirmed at the costs of the appellant.